TRINITY UNIVERSAL INSURANCE COMPANY, Plaintiff,

v.

Bruce J. BROUSSARD; G & L Investments, Ltd; and BITEC, Inc., Defendants.

No. 94–C–623–H.

United States District Court, N.D. Oklahoma.

March 18, 1996.

Norman Lemonik, Abowitz & Welch, Oklahoma City, OK, Mort G. Welch, Oklahoma City, OK, for Trinity Universal Ins. Co.

Randy Rankin, Tulsa, OK, Stanley D. Monroe, Stanley D. Monroe & Assoc., Tulsa, OK, for Bruce J. Broussard.

Louis Levy, Tulsa, OK, for G & L Investments, Ltd.

James K. Secrest, II, Andrew B. Morsman, Secrest Hill & Folluo, Tulsa, OK, for BITEC, Inc.

## ORDER

HOLMES, District Judge.

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Docket # 13).

Trinity Universal Insurance Company ("Trinity") brought this action seeking a declaratory judgment that it owes no coverage to Defendant Broussard for claims made against him by Defendants G & L Investments, Ltd., and BITEC, Inc. The following facts are undisputed.

1. Trinity Universal Insurance Company issued policy number GL7476716 to Bruce Broussard, d/b/a Greater Tulsa Contractors. The policy was in effect from July 1, 1989 through July 1, 1991.

2. On or about January 20, 1990, G & L Investments entered into a contract with Mr. Broussard to provide a new roof for the Ross–Martin Building in Tulsa. Mr. Broussard completed the work on the building on or about February 20, 1990.

3. The Ross–Martin Building is owned by G & L Investments, Ltd., an Oklahoma Limited Partnership ("G & L"). It is managed by Justin Gardner of Gardner Management Co., Oklahoma City.

4. The Ross–Martin Building roof leaks.

5. The roof installed by Mr. Broussard does not include a base sheet recommended by BITEC.

6. A written contract for the roof work was signed by Mr. Broussard which contained a warranty for all materials and labor.

7. Both BITEC, by its employee Larry Easterling, and Mr. Broussard inspected the Ross–Martin Building after the roof was installed and approved the job.

8. A written warranty was delivered by BITEC to G & L after the roof was installed.

9. The roof materials used were manufactured by BITEC.

10. G & L has filed case number CJ–93–05119 in the District Court of Tulsa County against Mr. Broussard and BITEC. G & L alleges breach of contract, breach of written warranty, breach of the implied warranty of merchantability, pre-contract misrepresentations by both defendants, negligence of Mr. Broussard in the installation of the roof, negligence of BITEC in failing to conduct a proper post-installation of the roof job and discover Mr. Broussard's work, and waiver of disclaimer provisions in the BITEC warranty.

11. Trinity has defended Mr. Broussard in the state court action from its beginning pursuant to reservation of rights letters dated January 28, 1994 and June 29, 1994.

12. In the Tulsa County action, G & L seeks damages of $186,416 to install a new roof on the Ross–Martin Building as well as attendant costs for attorneys' fees, taxes, insurance and interest. G & L's claim for § 186,416 is limited to repair or replacement of the roof installed by Mr. Broussard.

13. In the Tulsa County action, G & L alternatively seeks specific performance of the contract between G & L and Mr. Broussard by ordering Mr. Broussard to install a new roof on the Ross–Martin Building.

14. In the Tulsa County action, BITEC has filed a cross-claim against Mr. Broussard, asking that Mr. Broussard indemnify and hold BITEC harmless for any damages, injuries, or losses BITEC may be obligated to pay G & L in the principal amount.

Summary judgment is appropriate where "there is no genuine issue as to any material fact," *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Windon Third Oil & Gas Drilling Partnership v. Federal Deposit Ins. Corp.,* 805 F.2d 342, 345 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987), and "the moving party is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(c). In *Celotex,* the Supreme Court stated:

> [t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322, 106 S.Ct. at 2552.

■ A party opposing a properly supported motion for summary judgment must offer evidence, in admissible form, of specific facts, Fed.R.Civ.P. 56(e), sufficient to raise a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

■ Summary judgment is only appropriate if "there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 250, 106 S.Ct. at 2511. The Supreme Court stated:

> [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512. Thus, to defeat a summary judgment motion, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. ("There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (citations omitted)).

■ In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

Although Mr. Broussard does not dispute the facts set forth above, he contends that summary judgment is inappropriate because "there are conflicting inferences which may reasonably be drawn from those facts." Def.'s Resp. to Pl.'s Mot. for Summ. J. at 1. The Court construes this as an argument that the terms of the insurance policy are ambiguous and such ambiguities should be resolved in his, the insured's, favor.

> The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated. The interpretation of an insurance contract and whether it is ambiguous is a matter of law for the Court to determine and resolve accordingly.

*Dodson v. St. Paul Ins. Co.,* 812 P.2d 372, 376 (Okl.1991). The policy in the instant case is clear and unambiguous, and the Court will thus interpret it as a matter of law.

■ Mr. Broussard purchased "Commercial General Liability Coverage" ("CGLC") from Trinity. The policy provides in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUP-

PLEMENTARY PAYMENTS—COVERAGES A AND B. This insurance applies only to "bodily injury" or "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory." We will have the right and duty to defend any "suit" seeking those damages.

Policy at 1. In interpreting a policy, however, "exclusions are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy." *Dodson,* 812 P.2d at 377. The policy at issue here lists several exclusions, including a provision that "[t]his insurance does not apply to . . . '[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" *Id.* at 3.

The policy defines "your work" as "[w]ork or operations performed by you or on your behalf." The term specifically includes "warranties or representations made at any time with respect to the fitness, quality, durability, performance of 'your work.'" *Id.* at 9. The policy further provides:

"Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

The Court finds that the state court action seeking compensation for the defective roof is based upon work performed by Mr. Broussard and that the alleged property damage arises out of that work. The Court further holds that the purported property damage is included in the "products-completed operations hazard." Thus, the Court concludes that the exclusion is applicable in the instant case.

The Tenth Circuit, in construing similar exclusions, has stated:

Coverage under a [Commercial General Liability Policy] is not intended to extend to ordinary "business risks," such as those relating "to the repair or replacement of faulty work or products." The policy is not intended to serve as a performance bond or guaranty of goods or services. Its purpose is to protect the insured from liability for damages to property *other than his own work or property* that is caused by the insured's defective work or product.

*Hartford Accident & Indem. Co. v. Pacific Mut. Life Ins. Co.,* 861 F.2d 250, 253 (10th Cir.1988) (citations omitted).

Likewise, the Oklahoma Supreme Court has construed similar contract provisions in the following manner:

"What is covered by the policy is defective workmanship which causes personal injury or property damage not excluded under some provision of the policy. So if the insured's breach of an implied warranty results in damage to property *other* than the insured's work or product which is excluded by [this exception], the policy would provide coverage. To hold otherwise would effectively covert the policy into a performance bond or guarantee of contractual performance and result in coverage for the repair and replacement of the insured's own faulty workmanship. This was not the intent and understanding of the parties at the time the policy was purchased."

*Dodson,* 812 P.2d at 378 (quoting *Indiana Ins. Co. v. DeZutti,* 408 N.E.2d 1275, 1279 n. 1 (Ind.1980)).

Applying the rationale in the above-cited cases, it is clear that the exclusion here also involves this "business risk" exception. The Court notes that the damages sought by G & L in the state court action are limited to the cost of repairing or replacing the roof installed by Mr. Broussard or, alternatively, specific performance of the contract between G & L and Mr. Broussard by ordering Mr. Broussard to install a new roof on the Ross–Martin Building. G & L does not seek to recover for any damages occurring to other property as a result of the leaky roof. The Court therefore concludes that the policy explicitly

excludes from coverage any damages sought in the state court action. Because Trinity is not obligated to pay any judgment rendered against Mr. Broussard in that action, Trinity has no obligation to defend against those allegations. *See Leggett v. Home Indem. Co.,* 461 F.2d 257, 260 (10th Cir.1972).

Accordingly, Trinity's Motion for Summary Judgment is hereby granted (Docket # 13).

IT IS SO ORDERED.