556 S.E.2d 77

**Joseph W. CORDER, Jr., Executor of the Estate of Jane W. Mills, Deceased, Plaintiff Below, Appellant**

v.

**WILLIAM W. SMITH EXCAVATING CO., Defendant Below, Appellant,**

and

**United States Fidelity & Guaranty Company, Defendant Below, Appellee.**

No. 29006.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2001.

Decided Nov. 8, 2001.

John J. Polak, Rose & Atkinson, Charleston, for the Appellant, Joseph W. Corder, Jr., Executor.

Nelson R. Bickley, Bickley & Jacobs, Charleston, for the Appellant, William W. Smith Excavating Co.

Mary H. Sanders, James C. Stebbins, Huddleston, Bolen, Beatty, Porter & Copen, LLP, Charleston, for the Appellee.

ALBRIGHT, Justice.

Appellants Joseph Corder and the William W. Smith Excavating Company (hereinafter "Smith Excavating") jointly appeal from the June 27, 2000, order of the Circuit Court of Kanawha County granting summary judgment to Appellee United States Fidelity and Guaranty Company (hereinafter "USF & G") in an action brought by Mr. Corder against Smith Excavating and USF & G in connection with sewer line repair work performed by Smith Excavating on property owned by Mr. Corder.[1] Based on the allegations of the complaint, the lower court determined that there was no coverage under a commercial general liability policy issued by USF & G to Smith Excavating and that USF & G had no duty to defend Smith Excavating. Upon our review of the record, we determine that there is a question of fact that must be resolved and, accordingly, we remand this matter with directions set forth herein.

1. The property is actually owned by the Estate of Jane W. Mills, but for ease of discussion we will refer to Mr. Corder, the executor of the estate, as though he were the property owner.

## I. Factual and Procedural Background

In the complaint filed by Mr. Corder, as executor of the estate of Jane W. Mills, the following averments are made:

On or about September 21, 1995, Defendant Smith was hired by Plaintiff's agent to perform certain work including, but not limited to, sewer line repairs, storm drain repairs and slide correction, at the [Plaintiff's] subdivision.

On or about October 13, 1995, Defendant Smith completed its work at the subdivision.

On May 13, 1996, A–1 Rental Sales & Services performed a video pipe inspection for Plaintiff's agent, which evidenced that the sewer line had been damaged by Defendant Smith.

On October 3, 1996, the City of Charleston, West Virginia, informed Plaintiff's agent that the sewer system for the subdivision had failed a mandrel test because of the damage done by Defendant Smith to the sewer line. This failure delayed approval of the subdivision by the Municipal Planning Commission of the City of Charleston. The work performed by Defendant Smith was done in a negligent and careless manner.

As a direct and proximate result of Defendant Smith's negligence and carelessness, property which the Plaintiff owned and/or was responsible for, including but not limited to the sewer line, was damaged.

As a direct and proximate result of the conduct of Defendant Smith, Plaintiff became obligated for repair work performed to correct the damage to the property and has suffered consequential damages including, but not limited to, loss of use of the property, aggravation, annoyance and inconvenience.

Based on these allegations, Mr. Corder sought damages from Smith Excavating under theories of negligence, breach of contract, and breach of warranty.[2] Given the policy exclusions applicable to the "work" of the insured,[3] there was no dispute regarding the lack of coverage for all claims save one, because the other claims clearly arose out of the work of Smith Excavating.[4] The sole coverage issue presented for the circuit court's determination was whether the policy applied to the "loss of use" damages Mr. Corder sought in connection with his negligence claim. These "loss of use" damages arise from allegations that further development of additional sections of the subdivision owned by Mr. Corder[5] was delayed as a result of Smith Excavating's negligence.

In ruling on cross motions for summary judgment,[6] the circuit court applied this Court's decision in *Erie Insurance Property & Casualty Co. v. Pioneer Home Improvement, Inc.*, 206 W.Va. 506, 526 S.E.2d 28 (1999), in which we held that faulty workmanship claims are not within the scope of coverage extended by commercial general liability policies. Based upon its determination that "[a]ll of plaintiff's claims in the instant case arise from the 'workmanship' of the insured," the lower court concluded that there was no duty to defend and that the damages sought by Mr. Corder were not

---

**2.** Mr. Corder also named USF & G as a defendant, and sought recovery from Smith Excavating's insurer under the Uniform Declaratory Judgments Act, West Virginia Code §§ 55–13–1 to—16 (1941) (Repl.Vol.2000); as well as under theories of unfair claims settlement practices; unfair trade practices; and bad faith.

**3.** A general exclusion, set forth as exclusion J(6) denies coverage for "Property damage" to "That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." A more specific exclusion, exclusion L, applies to "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"

**4.** Applying policy exclusions J and L, the circuit court ruled that "any damage to the sewer line itself allegedly caused by the work of Smith Excavating is clearly not covered."

**5.** *See supra* note 1.

**6.** Mr. Corder sought partial summary judgment with regard to count four of the complaint through which he sought a declaratory judgment against USF & G in connection with seeking a determination of coverage for the negligence claims set forth in count one of the complaint. In support of this motion, Mr. Corder stated that the "[c]omplaint clearly alleges covered occurrences under the 'Product-completed operations hazard' provision of the policy."

within the scope of the coverage extended by the commercial general liability policy. Additionally, the lower court determined that coverage was not invoked due to the lack of an "occurrence." Even assuming the existence of an "occurrence," the circuit court ruled that the applicability of policy exclusion M, which expressly excludes coverage for "property damage"[7] to "property that has not been physically injured, arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition" in the work performed by Smith Excavating, would defeat coverage. As support for their contention that the lower court erred in granting summary judgment, Appellants argue that an "occurrence" sufficient to trigger coverage does exist and furthermore, that an exception to exclusion M prevents that exclusion from defeating coverage.

## II. Standard of Review

■ Our review of this matter is de novo as the order appealed from is a summary judgment ruling.[8] *See* Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III. Discussion

■ We begin our analysis with a recognition that in determining whether an insurer has a duty to defend, the determination is made based upon the allegations of the complaint. "As a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986). We have further recognized that "the duty to defend an insured may be broader than the obligation to pay under a particular policy. This ordinarily arises by virtue of language in the ordinary liability policy that obligates the insurer to defend even though the suit is groundless, false, or

fraudulent." *Id.* at 194, 342 S.E.2d at 160. With these general principles in mind, we turn to the issue of whether coverage exists under the USF & G policy.

In making their argument for coverage, Appellants look to the "Products–Completed Operations Hazard" provisions of the policy, which provides as follows:

a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle

---

7. "Property damage" is defined under the terms of the policy to include "loss of use" damages.

8. In identifying the applicable standard of review in their petition for appeal and supporting brief, Appellants describe the ruling appealed from as a declaratory judgment order. Because the standard of review for both summary judgment rulings and legal conclusions reached in making a declaratory judgment ruling is de novo, we need not address this issue at length. *See Cox v. Amick,* 195 W.Va. 608, 612, 466 S.E.2d 459, 463 (1995). Appellants acknowledge that the circuit court's order does not contain any findings of fact.

created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials;

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

The "loss of use" damages sought by Mr. Corder constitute "property damage," which is defined under the policy as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

Before any coverage can be found to exist under the "products-completed operations hazard," or any other portion of the commercial general liability policy, an "occurrence,"[9] within the policy definition of that term, must be determined to have occurred. An "occurrence" is defined by the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Appellants rely solely on the "accident" portion of this definition, rather than on the alternate definitional language concerning continuous or repeated exposure.

In its order granting summary judgment, the lower court states that: "It is the plaintiff's position that the Court should adopt the definition and interpretation of 'occurrence' set forth in *Calvert Ins. Co. v. Herbert Roofing & Insulation*, 807 F.Supp. 435 (E.D.Mich.1992) and *Ohio Casualty Ins. Co.*

*v. Terr[a]ce Enterprises*, 260 N.W.2d 450 (Minn.197[7]).[10] In examining whether resulting damage from a leaky roof was the result of negligent workmanship performed by the defendant contractor in *Calvert*, the Michigan district court observed:

whether something is an "accident" within the meaning of the standard liability policy depends in part upon whether the resulting damage is unforeseen and unexpected by the person injured or affected thereby. When the damage caused by an insured's defective workmanship is unforeseen and unexpected by the person injured thereby, the damage is accidental. Thus the property owners [in another case] whose homes or offices were damaged by water leaking from the insured's defective tubing were damaged by accident. However, when the damage arising out of the insured's defective workmanship is confined to the insured's own work product, the insured is the injured party, and the damage cannot be viewed as accidental within the meaning of the standard liability policy.

807 F.Supp. at 438 (emphasis omitted). Relying on *Calvert*, Appellants maintain that because the "loss of use" damages are not confined to Smith Excavation's work product, in this case repair on the sewer line, and because Smith Excavating did not expect or intend the resulting property damages, the requisite "accident" necessary to constitute an "occurrence" has been established. *See id., see also Ohio Cas.*, 260 N.W.2d at 452–53 (finding settling of building to be "occurrence" on theory that construction company's inadequate precautions may have been negligent, but not reckless or intentional where definition of "occurrence" included an " 'accident ... which results ... in ... property damage neither expected nor intended from the standpoint of the insured' ").[11]

---

9. The policy provides coverage for "bodily injury" and "property damage" only if such injury or damage "is caused by an 'occurrence' that takes place in the 'coverage territory.' "

10. In relying on case law outside our jurisdiction to argue that the facts of this case support the existence of an "accident," Appellants implicitly acknowledge the absence of any West Virginia precedent in support of their position that an "occurrence" exists for purposes of coverage.

11. As Justice Starcher explained in his concurring opinion to *State ex rel. Davidson v. Hoke*, 207 W.Va. 332, 532 S.E.2d 50 (2000), prior to 1986 "occurrence" was defined in terms of whether the insured expected or intended the injury or damage for which coverage was being sought. *Id.* at 340, n. 3, 532 S.E.2d at 59 n. 3 (Starcher, J., concurring). Due to the extensive litigation that resulted from courts requiring insurers to prove that both the act and the result were ex-

Without taking a position on the definition of "accident"[12] employed by the Michigan and Minnesota courts, the circuit resolved the issue before it by applying this Court's recent decision in *Erie Insurance Property & Casualty Co. v. Pioneer Home Improvement, Inc.*, 206 W.Va. 506, 526 S.E.2d 28 (1999). The lower court ruled: "The instant case is analogous in all material respects to *Pioneer Home Improvement* .... Based upon that case, plaintiff's claims are not covered insofar as the damages are alleged to have resulted directly from the fact that defendant Smith did not properly perform its work."

In *Pioneer*, we discussed at length the nature of commercial general liability policies and specifically contrasted such policies and the risks they cover to performance bonds and builder's risk policies. 206 W.Va. at 509–12, 526 S.E.2d at 31–34. We cited with approval the following discussion concerning the risks intended to be covered by commercial general liability policies:

> The products hazard and completed operations provisions are not intended to cover damage to the insured's products or work project out of which an accident arises. The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Pioneer*, 206 W.Va. at 511, 526 S.E.2d at 33 (quoting Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb. L.Rev. 415, 441(1971)).

█ Based on our determination in *Pioneer* that "CGL [commercial general liability] policies of insurance do not provide protection for poor workmanship," we found that there was no coverage for the breach of contract claims since the damages being sought were connected to a contractor's faulty workmanship. *Id.* at 511–12, 526 S.E.2d at 33–34. Accordingly, we held in syllabus point two of *Pioneer* that "[a] lawsuit commenced by a building owner against a building contractor alleging damages caused by faulty workmanship is not within the coverage provided by the contractor's general liability policy of insurance unless such coverage is specifically included in the insurance policy." 206 W.Va. at 507, 526

---

pected and intended to avoid coverage, the standardized policies were modified in 1986 "to make the 'expected/intended' provision a specific policy exclusion." *Id.* Accordingly, any reliance by Appellants on the *Ohio Casualty* decision is certainly questionable in light of the court's emphasis on the unintentional nature of the actions taken by the contractor in deciding whether an "occurrence" had occurred. *See* 260 N.W.2d at 452–53.

12. The USF & G policy does not define the term "accident." In *Missouri Terrazzo Co. v. Iowa National Mutual Insurance Co.*, 566 F.Supp. 546 (E.D.Mo.1983), *aff'd*, 740 F.2d 647 (8th Cir. 1984), a case relied upon by Appellants, the district court observed that "[t]he courts are practically agreed that the word 'accident' means that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual, and unforeseen." 566 F.Supp. at 552. This Court recently cited with approval the following definition of "accident:"

> [a]n 'accident' generally means an unusual, unexpected and unforeseen event.... An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage.... To be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual.

*State Bancorp, Inc. v. United States Fidelity and Guar. Ins. Co.*, 199 W.Va. 99, 105, 483 S.E.2d 228, 234 (1997) (quoting *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group*, 37 Wash.App. 621, 681 P.2d 875, 878 (1984)).

S.E.2d at 29. Relying on *Pioneer,* the lower court reasoned that there was no coverage under the policy because "plaintiff's claims of 'negligence' is [sic] really a claim of faulty workmanship."

Because the damages at issue in *Pioneer* were breach of contract in nature and limited to those costs arising out of the repair and/or replacement of the defective workmanship, *Pioneer* is not on all fours with the present case.[13] Here, the sole issue that the lower court was asked to resolve is whether coverage exists for the "loss of use" damages sought in connection with Mr. Corder's negligence claim. Whether the lower court was correct in ruling that coverage does not exist for "loss of use" damages by viewing this type of damage as arising from the alleged faulty workmanship, requires a careful examination of the policy language in conjunction with the allegations of the complaint.

 The primary hurdle for the Appellants, and the one that Appellee focuses heavily on, is the requirement that an "occurrence" must exist before coverage can be invoked. We agree with the lower court's conclusion that commercial general liability policies are not designed to cover poor workmanship. Poor workmanship, standing alone, cannot constitute an "occurrence"[14] under the standard policy definition of this term as an "accident including continuous or repeated exposure to substantially the same general harmful conditions."[15]

 In reviewing the record in this case, we find the facts of this case relevant to the work performed by Smith Excavating and the alleged acts of negligence to be less than crystal clear. While the lower court concluded that Mr. Corder's claim was essentially a claim of faulty workmanship, we cannot definitively discern from the record before us what caused the sewer line to fail to perform its intended function, assuming that it did indeed fail or was inoperable at any time.[16] Because the facts relevant to the alleged failure or buckling of the sewer line are murky at best, we are incapable of determining whether the lower court was correct in ruling that no "occurrence" took place within the meaning of the policy. Another indication to this Court concerning a potential factual issue arises from the lower court's reference in its summary judgment order to Mr. Corder's statement that " 'the work by Smith was completed, that it was performed improperly, that *subsequent exposure* to Smith's negligent work damaged the sewer line *and* other property of plaintiff.' "[17] (emphasis supplied.) There simply is no finding or development as to the nature of this "subsequent exposure" sufficient to permit this Court to make a determination of whether the lower court was correct in its conclusion that the negligence-related damages are not covered under the policy due to their faulty workmanship origin or, alternatively, if the trial court was incorrect and the "loss of use"

13. While Appellants do seek repair and replacement costs through their lawsuit, they concede that such costs are not covered by the policy at issue.

14. In support of this conclusion, the lower court cited the following authority: *J.Z.G. Resources, Inc. v. King,* 987 F.2d 98 (2nd Cir.), *cert. denied,* 510 U.S. 993, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993); *Dreis & Krump Mfg. Co. v. Phoenix Ins. Co.,* 548 F.2d 681 (7th Cir.1977); *Trinity Universal Ins. Co. v. Broussard,* 932 F.Supp. 1307 (N.D.Okla.1996); *Reliance Ins. Co. v. Mogavero,* 640 F.Supp. 84 (D.Md.1986); *USF & G Co. v. Advance Roofing & Supply Co.,* 163 Ariz. 476, 788 P.2d 1227 (App.1989); *Economy Lumber Co. v. Insurance Co. of North America,* 157 Cal. App.3d 641, 204 Cal.Rptr. 135 (1984); *Aetna Cas. & Sur. Co. v. Deluxe Sys., Inc.,* 711.So.2d 1293 (Fla.App.1998); *Monticello Ins. Co. v. Wil-Freds Constr., Inc.,* 277 Ill.App.3d 697, 214 Ill. Dec. 597, 661 N.E.2d 451 (1996); *Rivnor Proper-*

*ties v. Herbert O'Donnell, Inc.,* 633 So.2d 735 (La.App.1994); *Hawkeye–Security Ins. Co. v. Vector Constr. Co.,* 185 Mich.App. 369, 460 N.W.2d 329 (1990); *McAllister v. Peerless Ins. Co.,* 124 N.H. 676, 474 A.2d 1033 (1984).

15. The circuit court also ruled that poor workmanship, alone, was not sufficient to constitute an "accident" under a commercial general liability policy.

16. We raise this issue as Appellee notes a statement made by the decedent Mills in a letter dated March 18, 1998, to Cincinnati Insurance Co. that the sewer pipe "was and has been in continuous service."

17. While the complaint does not reference this "subsequent exposure," we view it as part of the record based upon the lower court's inclusion of the allegation in its order.

damages are covered because they do not arise from faulty workmanship.

■ Because the lower court made no findings in support of its determination that Mr. Corder's negligence claim was solely a claim for faulty workmanship, we are without the necessary factual underpinnings from which to determine whether an "occurrence" may have taken place in this case sufficient to invoke coverage under the policy. Based on the possibility that there is a genuine issue of material fact concerning the existence of an "occurrence," prompted by our determination that the nature of the negligence complained of or more particularly, the acts which caused the alleged buckling of the sewer pipe, is not evident from the record, we must remand this matter for further factual development. Given the presence of these genuine issues of fact, the decision of the lower court cannot be affirmed under the longstanding rule that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963); *see also* W.Va.Code § 55–13–9 (1941) (Repl.Vol.2000) (permitting determination of factual findings in declaratory judgment matters in same fashion as other civil actions); *Erie Ins. Prop. and Cas. Co. v. Stage Show Pizza*, 210 W.Va. 63, 66, 553 S.E.2d 257, 260 (2001) (stating that "when a declaratory judgment proceeding involves the determination of an issue of fact, that issue may be tried and determined by a judge or jury in the same manner as issues of fact are tried and determined in other civil actions").

■ After a factual development of the acts which caused or led to the alleged buckling or failure of the sewer pipe, the circuit court should apply the policy language in the following manner. Initially, there must be proof of an "occurrence," based upon the policy definition. In determining whether the facts of this case support the existence of an "occurrence," the facts relevant to the alleged failure of the pipe are critical. The key to determining the existence of an "occurrence" is whether a separate act or event or happening occurred at some point in time that led to the failure of the pipe or whether the pipe's alleged failure is tied to the original acts of repair performed by Smith Excavating.[18] While the lower court assumed in its order that the latter is the case, we do not see clear evidence from the record that this is the case.

■ Assuming the proof of acts that constitute an "occurrence" within the meaning of the policy, the circuit court must then consider whether any exclusionary provisions are applicable. The exclusionary language relied upon by the court below was that of exclusion M, which excludes coverage for:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> > (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" or
> >
> > (2) A delay or failure by you or anyone acting on your behalf to perform a con-

18. Appellee distinguishes all the cases relied upon by Appellants to support their position that an "occurrence" exists under the policy by observing that in those cases there was a separate physical damage or injury to something other than the work of the insured which constituted the "occurrence," rather than the workmanship itself. *See Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720 (5th Cir.1999) (involving physical damage to parking lot caused by excavator who used faulty materials underneath the parking lot); *Underwriters at Interest v. SCI Steelcon*, 905 F.Supp. 441 (W.D.Mich.1995) (involving collateral physical injury to interior of hangar and airplanes caused by roof leaks); *Calvert, supra*, 807 F.Supp. 435 (involving physical damage to building as a result of rainfall wherein "occurrence" was the water leak); *USF & G v. Barron Indus., Inc.* 809 F.Supp. 355 (M.D.Pa. 1992) (involving fire and explosion which constituted an "occurrence"); *Fejes v. Alaska Ins. Co.*, 984 P.2d 519 (Alaska 1999) (involving failure of "curtain drain" which caused physical injury to separate septic system); *Ohio Cas., supra*, 260 N.W.2d 450 (involving physical damage caused by settling of building); *Erie Ins. Exch. v. Colony Dev. Corp.*, 136 Ohio App.3d 419, 736 N.E.2d 950 (2000) (involving collateral physical injury to landscape and trees); *see also Missouri Terrazzo, supra*, 566 F.Supp. 546 (involving limited issue of diminution in value and lacking any discussion of "occurrence" issue).

tract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

When applied to the facts of this case, exclusion M may preclude coverage for "property damage"—here, "loss of use"—for property that has not been physically injured and in which the alleged damages arose out of a "defect, deficiency, [or] inadequacy" in Smith Excavation's work. Accordingly, exclusion M will operate to defeat coverage unless Appellants can demonstrate that the alleged "loss of use" arose out of "sudden and accidental physical injury" to the work of Smith Excavating on the sewer pipe.

While Appellants failed below to discuss the operation of exclusion M, on appeal they rely upon the exception to this exclusion which is operational upon proof of a "sudden and accidental physical injury." Just as we concluded that we could not determine whether an "occurrence" took place given the sparse factual development regarding the cause of the alleged pipe failure, we similarly cannot determine from the record before us whether the facts permit Appellants to rely upon the exception to exclusion M. Because of this Court's recognition that "an insurer must meet a rigorous standard to avoid its obligation to defend," we conclude that Appellants should have the opportunity to produce whatever evidence they have in support of their position that the sewer pipe's alleged failure resulted from "sudden and accidental physical injury." *Silk v. Flat Top Constr. Inc.*, 192 W.Va. 522, 525, 453 S.E.2d 356, 359 (1994). If Appellants can produce evidence of a "sudden and accidental physical injury" to Smith Excavating's "work," then they will have simultaneously demonstrated both the "occurrence" necessary to invoke coverage and also have implicated the exception to exclusion M. Barring such evidence, however, exclusion M will operate to defeat coverage for the "loss of use" damages being sought by Mr. Corder.

Based on the foregoing, the decision of the Circuit Court of Kanawha County is hereby reversed and remanded for further proceedings consistent with this opinion.

Reversed and Remanded with Directions.