OPINION
{¶ 1} This appeal arises from a declaratory judgment action filed by Appellee, Nationwide Ins. Co. ("Nationwide"), in the Columbiana County Court of Common Pleas on November 7, 2001. Nationwide identified Appellants Alvin and Rosemary Phelps ("Phelps") and its insured Jerry Jones ("Jones") as defendants. Nationwide issued a commercial general liability policy ("Policy") to Jones, effective December 27, 1997.
 {¶ 2} This action was filed to determine the rights and responsibilities of Nationwide with regard to the civil action pending between Appellants and its insured, Jones. The civil action which was the catalyst for this case was filed by the Phelps against Jones, d.b.a. J J Construction, and John Lengyel, ("Lengyel"), d.b.a. J J Construction. That matter was filed in the United States District Court, Northern District of Ohio.
 {¶ 3} The federal litigation arose out of the construction of Appellants' residence in Salineville, Ohio, in October of 1996. Nationwide's insured, Jones, d.b.a. J J Construction, was apparently acting as the general contractor for the construction. The Phelps' original federal complaint alleged that Jones and Lengyel negligently, recklessly, and intentionally caused both property damage and emotional and physical pain and suffering. Appellants' amended complaint added breach of contract and breach of warranty allegations.
 {¶ 4} This is the second time this declaratory judgment matter has come before us. Following the trial court's decision to grant summary judgment to Nationwide on April 8, 2002, we reversed and remanded the case back to the trial court. Subsequent to our remand, but before the trial court's second order, the federal litigation was resolved in the Phelps' favor. Specifically of interest, here, the Phelps received a jury verdict against Jones for $62,900 in compensatory damages for breach of contract. They were also awarded money damages for costs and overruns against Jones, his company, and Lengyel.
 {¶ 5} Nationwide apparently provided Jones with defense counsel throughout the federal litigation under a reservation of rights. An uncertified copy of the reservation of rights letter is attached to Appellee's Reply Memorandum filed in this matter on April 2, 2002. Nationwide also intervened in the federal suit for the limited purpose of submitting jury interrogatories. The apparent purpose of these interrogatories was to ensure that any judgment awarded the Phelps would not be covered under the terms of the Policy.
 {¶ 6} Apparently, Jones filed for bankruptcy relative to the Phelps' claims and is presumably uncollectible. He has not been represented by counsel, throughout the course of this proceeding, never filed an answer herein and did not oppose the motions for summary judgment filed to the trial court.
 {¶ 7} As earlier mentioned, on January 31, 2003, this Court reversed and remanded the Columbiana County Common Pleas Court's first order granting Nationwide summary judgment. We determined that West Virginia law governed the interpretation of the Policy pursuant to Restatement of Law 2d (1971) 561, Conflict of Laws, Section 188, and the Ohio Supreme Court's decision in Ohayon v.Safeco Ins. Co. of Illinois (2001), 91 Ohio St.3d 474,747 N.E.2d 206. See Nationwide Ins. Co. v. Phelps, 7th Dist. No. 2002 CO 27, 2003-Ohio-497 at ¶ 16. We held that summary judgment was improper since Nationwide failed to provide the trial court with a copy of the Phelps' federal complaint to determine if the allegations arguably asserted a covered loss. Id.
 {¶ 8} Following our remand, Nationwide filed another motion for summary judgment based on the federal jury decision and this Court's earlier Opinion. After several addendums and responsive motions in opposition were filed, the trial court granted Nationwide's subsequent summary judgment motion. The trial court ruled that there was no coverage under the Policy for Appellants' judgment against Jones because the judgment was for damages caused by the insured's breach of contract. Appellants filed this timely appeal.
 {¶ 9} A decision to grant summary judgment is reviewed de novo. Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390,738 N.E.2d 1243; Dresher v. Burt (1996), 75 Ohio St.3d 280,662 N.E.2d 264. In order to grant a motion for summary judgment, a court must find that, construing the evidence most strongly in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,375 N.E.2d 46. A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. Williams v. First United Church of Christ (1974),37 Ohio St.2d 150, 151, 309 N.E.2d 924.
 {¶ 10} Appellants assert three assignments of error on appeal. Appellant's third assignment of error will be addressed first, because it deals with the underlying federal action and its effects herein. Appellants' third assignment of error asserts:
 {¶ 11} "Error as coverage to Nationwide Insurance as third party intervenor"
 {¶ 12} The body of this assignment of error asserts that Nationwide should be precluded from prevailing in its declaratory judgment action due to its intervention in the federal case. Appellants claim that Nationwide is bound by the principle of res judicata to pay the judgment rendered against its insured. They believe that Ohio law governs this issue because it does not involve an interpretation of the Policy.
 {¶ 13} Appellants are correct in their assertion that Nationwide is to some extent bound by the jury's verdict in the federal civil suit. The interrogatories submitted to and answered by the jury in that case are essential to determining coverage in the instant matter. It is clear from the answers to these interrogatories that the Phelps were awarded damages for repairing the defects and omissions in the construction of their house and that these defects and omissions were as a result of Jones' breach of contract. (Appellee's Supplementary Motion for Summary Judgment, Exhibit B, p. 2.)
 {¶ 14} The federal court's determination as to liability and damages collaterally estops both Appellants and Nationwide from litigating those facts in the instant case. Collateral estoppel, now known as "claim preclusion," precludes the re-litigation of, "[a] point or a fact which was actually and directly at issue in a former action and was there passed upon and determined by a court of competent jurisdiction[.]" Kelly v. Georgia-PacificCorp. (1989), 46 Ohio St.3d 134 at 141, 545 N.E.2d 1244, citingNorwood v. McDonald (1943), 142 Ohio St. 299, 52 N.E.2d 67, paragraph three of the syllabus. This rule provides that, "even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." Kelly at 141, citing Whitehead v. Gen. Tel.Co. (1969), 20 Ohio St.2d 108, at 112, 254 N.E.2d 10.
 {¶ 15} The fact that Nationwide intervened in the federal lawsuit does not mean it is obligated to pay the verdict on behalf of its insured. While the jury's verdict precludes relitigation of the issues relating to Jones' liability and Appellants' damages, it does not prevent Nationwide from attempting to determine their responsibilities under the contract of insurance in this declaratory judgment action. Nationwide's contractual obligations under the Policy relative to payment of the verdict was never litigated in the federal court. Therefore, Appellants' third assignment of error lacks merit and is overruled.
 {¶ 16} The remaining issue is whether the federal jury's verdict against Jones in Appellants' favor is covered by the Policy. Appellants' first and second assignments of error address this issue.
 {¶ 17} Appellants' first assignment of error asserts:
 {¶ 18} "Error as coverage found — subcontractors [sic] work, proximate cause as to an occurrence"
 {¶ 19} This Court has previously determined that West Virginia law governs the contract of insurance issued by Nationwide. Nationwide Ins. v. Phelps, 7th Dist. No. 2002 CO 27, 2003-Ohio-497 at ¶ 16. As to the pertinent West Virginia law, we stated:
 {¶ 20} "Under West Virginia law, the construction of written contracts is a question of law. * * * When construing a contract, a court must not alter, pervert, or destroy the clear meaning and intent of the parties which is expressed in the language they chose to use in their agreement. * * * The language in any contract must be considered as an integrated whole, giving effect, if possible, to all parts of the instrument. * * * The words used in a contract should be given their plain and ordinary meaning. * * * When the provisions of a contract are clear and unambiguous, they must be applied, not construed. * * *
 {¶ 21} "A provision of a contract is ambiguous whenever the language of that provision is reasonably susceptible to two different meanings or is of such doubtful meaning that reasonable minds could disagree as to its meaning. * * * If the provisions of an insurance contract are ambiguous, then the terms of that contract must be strictly construed against the insurer and in favor of the insured. * * * Thus, when an insurance contract is ambiguous and open to judicial construction, the courts should give effect to `the objectively reasonable expectations' of the applicants and intended beneficiaries regarding the terms of the insurance contract `even though painstaking study of the policy provisions would have negated those expectations.' * * * West Virginia courts will more carefully scrutinize any policy language which has the effect of excluding an insured from coverage." (Citations omitted.) Id. at ¶¶ 18-19.
 {¶ 22} The Policy issued to Jones provided the following business liability and medical expenses coverage:
 {¶ 23} "A. Coverages
 {¶ 24} "1. Business Liability
 {¶ 25} "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of * * * `property damage' * * * to which this insurance applies. * * *
 {¶ 26} "b. This insurance applies:
 {¶ 27} "(1) To `bodily injury' and `property damage' only if:
 {¶ 28} "(a) The * * * `property damage' is caused by an `occurrence' that takes place in the `coverage territory'; and
 {¶ 29} "(b) The * * * `property damage' occurs during the policy period." (Policy Form ACP-0007, p. 1 of 14.)
 {¶ 30} The requirement that the incident be in the "coverage territory" and "during the policy period" are not in dispute. The dispute in the instant case is whether the federal judgment against Jones constitutes "property damage" caused by an "occurrence."
 {¶ 31} Appellants argue that the judgment is covered under the Policy since the damage arose via "accidents" by Jones' subcontractors, and thus they are covered "occurrences." The Policy defines an "occurrence" as, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Policy Form ACP-0007, p. 13 of 14.)
 {¶ 32} Specifically, Appellants assert that Jones' subcontractors had at least two "accidents." The first accident was when a subcontractor placed the foundation blocks on the wrong side of the pins, thereby creating a smaller foundation than the one in the specifications. (Brief of Defendant-Appellants, pp. 9-10.) The second alleged accident occurred when a subcontracted excavator placed dirt on top of the foundation, allegedly causing foundation damage via "continual" pressure. (Brief of Defendant-Appellants, p. 10.)
 {¶ 33} To the contrary, Nationwide argues that the judgment stems wholly from Jones' poor workmanship, and thus the judgment is not covered under the Policy. Since the jury already determined that the damages were caused as a result of Jones' breach of contract, the issue for coverage purposes is limited.
 {¶ 34} Fundamentally, the issue before us is limited to whether Jones' breach of contract which resulted in damages to Appellants in the form of restoration and repair of their residence is covered under the Nationwide liability policy.
 {¶ 35} Appellants' first assignment of error is based on their conclusion that the damages are covered under an exception to the exclusion set forth in B.1.m. of the Policy. This, in turn, is based on their conclusion that the damages were caused by subcontractors' "accidents." Exclusion B.1.m. provides:
 {¶ 36} "B. Exclusions
 {¶ 37} "1. Applicable to Business Liability Coverage
 {¶ 38} "This insurance does not apply to:
 {¶ 39} "* * *
 {¶ 40} "m. `Property damage' to `your work' arising out of it or any part of it included in the `products-completed operations hazard.'
 {¶ 41} "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (Policy Form ACP-0007, pp. 2, 5 of 14.)
 {¶ 42} Appellants are likely correct in their assertion that their damages occurred as a result of the work performed by Jones' subcontractors. However, Appellants fail to recognize that the Policy must first provide underlying coverage. Only after the Policy provides apparent coverage will Nationwide seek to apply the exclusion set forth in B.1.m. At that point, Appellants would be able to argue that the exception to exclusion B.1.m. applies. If there is no coverage given under the Policy in the first place, an exception to an exclusion will never operate to provide coverage.
 {¶ 43} Further, an exception to an exclusion from coverage does not extend coverage where the contract of insurance contained other applicable exclusions and where the insurance contract was a liability policy and not a builder's risk policy.Helfeldt v. Robinson (1981), 170 W. Va. 133, 290 S.E.2d 896, syllabus. Standing on its own, Appellants' first assignment fails because Appellants have not been able to identify the underlying provision providing coverage.
 {¶ 44} Appellants' only argument tending to support underlying coverage is contained within their second assignment of error:
 {¶ 45} "Error as coverage to be had, products completed operations"
 {¶ 46} In their second assignment, Appellants claim that their damages are covered by the Policy under the products-completed operations hazard definition.
 {¶ 47} Appellants' arguments in favor of coverage rely exclusively on the definitional section of the Policy, which include:
 {¶ 48} "F. Liability and Medical Expenses definitions
 {¶ 49} "* * *
 {¶ 50} "11. a. `Products-Completed Operations Hazard' includes all `bodily injury' and `property damage' arising out of `your product' or `your work' except:
 {¶ 51} "(1) Products that are still in your physical possession; or
 {¶ 52} "(2) Work that has not yet been completed or abandoned.
 {¶ 53} "The * * * `property damage' must occur away from premises you own or rent." (Policy Form ACP-0007, p. 13 of 14.)
 {¶ 54} The Policy defines "property damage" and "your product" for its purposes:
 {¶ 55} "12. `Property Damage' means:
 {¶ 56} "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
 {¶ 57} "b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the `occurrence' that caused it."
 {¶ 58} "* * *
 {¶ 59} "14. `Your Product' means:
 {¶ 60} "a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed * * *
 {¶ 61} "* * *
 {¶ 62} "`Your products' includes:
 {¶ 63} "a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of `your product'; and
 {¶ 64} "* * *
 {¶ 65} "15. `Your Work' means:
 {¶ 66} "a. Work or operations performed by you or on your behalf; and
 {¶ 67} "b. Materials, parts or equipment furnished in connection with such work or operations.
 {¶ 68} "`Your Work' includes:
 {¶ 69} "a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of `your work'[.]" (Policy Form ACP-0007, pp. 13-14 of 14.)
 {¶ 70} Based solely on the definitions section of the Policy, Appellants assert that the products-completed operations hazard definition applies and provides coverage. However, Nationwide argues that we must look beyond mere definitions and again points to the exclusion section of the Policy. Under this portion, Nationwide states that there was clearly no coverage under the liability exclusions B.1.k. (5) and (6). The exclusions provide, in pertinent part:
 {¶ 71} "B. Exclusions
 {¶ 72} "1. Applicable to Business Liability Coverage
 {¶ 73} "This insurance does not apply to:
 {¶ 74} "* * *
 {¶ 75} "k. `Property damage' to:
 {¶ 76} "* * *
 {¶ 77} "(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the `property damage' arises out of those operations; or
 {¶ 78} "(6) That particular part of any property that must be restored, repaired or replaced because `your work' was incorrectly performed on it.
 {¶ 79} "* * *
 {¶ 80} "Paragraph (6) of this exclusion does not apply to `property damage' included in the `products-completed operations hazard.'" (Policy Form ACP-0007, pp. 2, 5 of 14.)
 {¶ 81} "Your work" includes work performed "on your behalf[.]" (Policy Form ACP-0007, p. 14 of 14.)
 {¶ 82} Appellants argue that B.1.k. (5) is inapplicable here, because the work is completed and thus we are not faced with a situation involving property on which the insured is currently working. However, Appellants did not address the more specific exclusion found in B.1.k. (6).
 {¶ 83} The West Virginia Supreme Court of Appeals has dealt with a strikingly similar issue in Erie Ins. v. Pioneer HomeImprovement, Inc. (1999), 206 W. Va. 506, 526 S.E.2d 28. TheErie case addressed whether an insurance policy worded like the one in the instant matter indemnified a contractor in a breach of contract and faulty workmanship suit when the resultant damage claim was based on the cost of correcting the contractor's faulty work.
 {¶ 84} The plaintiff in Erie also sought coverage via the policy's completed operations hazard coverage. In rendering its decision, the Erie court analyzed and stressed the distinction between a "business risk" and an "occurrence of harm risk" as found in a general liability policy of insurance. Id. at 510. The court explained that generally, such a policy, "covers an occurrence of harm risk but specifically excludes a business risk." Id. The Erie court found that:
 {¶ 85} "[The contractor] purchased a CGL policy. These policies do not insure the work or workmanship which the contractor or builder performs. They are not performance bonds or builders' risk policies. CGL policies, instead, insure personal injury or property damage arising out of the work. * * *
 {¶ 86} "* * *
 {¶ 87} "* * * The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured * * * may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable[.] * * * This liability, however, is not what the coverages in question are designed to protect against. * * *
 {¶ 88} "* * * `the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident.'" (Citations omitted.) Id. at 511.
 {¶ 89} Ultimately, Erie held that:
 {¶ 90} "* * * a lawsuit commenced by a building owner against a building contractor alleging damages caused by faulty workmanship is not within the coverage provided by the contractor's general liability policy of insurance unless such coverage is specifically included in the insurance policy. * * * Also, damages to a building sustained by an owner as the result of a breach of a construction contract due to a contractor's faulty workmanship are a business risk to be borne by the contractor and not by his commercial general liability insurer." Id. at 512, see, also, Corder v. William M. Smith ExcavatingCo. (2001), 210 W. Va. 110, 116, 556 S.E.2d 77.
 {¶ 91} In the instant case, the Policy does not provide coverage for Jones' faulty workmanship. Further, pursuant toErie, which controls here, the products-completed operations hazard language does not insure damages arising out of the insured's faulty workmanship unless personal injury or property damage arose out of the work, "other than to the product or completed work itself." Id. at 511. "The coverage is for tort liability for physical damages to others and not for contractual liability of the insured * * * because the * * * completed work is not that for which the damaged person bargained." Id.
 {¶ 92} Appellants mistakenly rely on Corder v. William M.Smith Excavating Co. (2001), 210 W. Va. 110, 556 S.E.2d 77, again asserting that their damages should be covered since they arose out of an "accident" and that they sustained a "loss of use." However, as in Erie, the damages at issue in the instant case arose exclusively from a breach of contract. In Corder, the issue was whether Corder's allegations of negligence were covered as a matter of law. In reversing and remanding summary judgment,Corder concluded there was insufficient evidence to determine that Corder's, "negligence claim was solely a claim for faulty workmanship[.]" Id. at 116.
 {¶ 93} In the matter before us, the federal court has already determined that the Phelps do no have a viable negligence claim.
 {¶ 94} While Appellant's damages may have been "accidental," that is, the subcontractors did not intentionally cause the errors which resulted in shoddy workmanship, they were not "accidents" which resulted in physical tort liability to Appellants' or others. Appellants did not get the house they contracted Jones to build. Thus, Jones breached his contract to provide the Phelps with what they wanted. When the federal jury awarded them damages, it was based on what it would cost to correct the problems, not for any pain or suffering experienced by the Phelps. Because the issue as to the kind of damages caused by Jones has already been decided by the federal court, they cannot now claim any other kind of damage.
 {¶ 95} The federal court held that Appellants' damages arose solely out of breach of contract, and damages were awarded for restoring and repairing the defendants' defective construction.Erie applies to interpret the general liability policy at issue here and excludes coverage for Appellants' contractual damages. While Appellants argue that certain other exceptions should apply, they have not raised, nor can they raise, an exception that overcomes the exclusion of liability coverage for property damage based on faulty workmanship. Thus, Appellants' second assignment of error is also without merit.
 {¶ 96} Based on the record herein, Appellants' assignments of error must fail and the trial court's judgment is hereby affirmed.
Judgment affirmed.
Donofrio and DeGenaro, JJ., concur.