526 S.E.2d 28

**ERIE INSURANCE PROPERTY AND CASUALTY COMPANY, Plaintiff Below, Appellee,**

v.

**PIONEER HOME IMPROVEMENT, INC., Defendant Below, Appellant,**

**Gerald Skanes and Mary E. Skanes, Defendants Below, Appellees.**

No. 26216.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 6, 1999.

Decided Dec. 10, 1999.

Ancil G. Ramey, Esq., Steptoe & Johnson, Charleston, West Virginia, Attorney for Plaintiff Below, Appellee.

Paul A. Ryker, Esq., Huntington, West Virginia, Attorney for Pioneer Home Improvement, Inc.

Mark R. Staun, Esq., John F. Dascoli, Esq., The Segal Law Firm, Charleston, West Virginia, Attorneys for Skanes.

MAYNARD, Justice:

The appellant, Pioneer Home Improvement, Inc. (Pioneer), appeals the December 17, 1998 order of the Circuit Court of Cabell County, West Virginia, wherein the court determined that the appellee, Erie Insurance Property and Casualty Company (Erie), had no duty to defend or indemnify Pioneer under Pioneer's commercial general liability (CGL) policy of insurance. Pioneer argues the court erred in finding that the policy did not provide coverage for defective work and in failing to find that Erie had a duty to continue to defend Pioneer. We disagree and affirm.

Pioneer is a corporation which performs construction work including the installation of siding, doors, and windows. On July 22, 1996, Gerald and Mary Skanes contracted with Pioneer to do some work on their home, including installation of new siding. The Skanes advanced an initial payment to Pioneer prior to the commencement of construction. The work was not performed to the Skanes' satisfaction nor did it progress as quickly as they had hoped. Nonetheless, at Pioneer's urging, the Skanes paid the second installment. Relations deteriorated between Pioneer and the Skanes to the point that

Pioneer terminated work operations on the property and the Skanes refused to pay the balance of the contract. Pioneer filed a mechanics' lien against the Skanes' property. The Skanes filed a lawsuit against Pioneer, alleging breach of contract in the performance of certain home improvements and slander of title in the filing of a mechanics' lien.[1]

During this time, Pioneer was insured by Erie under a policy titled "Ultraflex Package Policy." Erie provided defense counsel services to Pioneer under a reservation of rights. After Pioneer refused to withdraw its demand for defense and indemnification, Erie filed a declaratory judgment action, seeking a declaration of its obligations under the insurance policy. The circuit court granted summary judgment to Erie, stating that

> the plaintiff, Erie Insurance Property and Casualty Company, has no duty to defend or indemnify the defendant, Pioneer Home Improvement, Inc., under the policy of insurance which is the subject of this action, with respect to a civil suit filed by the defendants, Gerald Skanes and Mary E. Skanes, alleging breach of contract and slander of title.

Erie was permitted to withdraw from its defense of Pioneer. However, Pioneer's private counsel continued to represent Pioneer during the remainder of the litigation. According to the briefs filed on appeal, a trial was held in the underlying action which resulted in a verdict for the Skanes in the amount of $26,500.00, which Pioneer has since paid.

Pioneer subsequently filed a motion to alter or amend the judgment of the court on the issue of whether Erie had a duty to defend or indemnify Pioneer. The court entered an order denying the motion. It is from this order that Pioneer appeals.

On appeal, Pioneer contends the circuit court erred in finding that no coverage existed under the policy of insurance provided by Erie to Pioneer regarding the Skanes' claim for defective work on their home. Pioneer argues the court should have held that the claim was covered under the "completed operations hazard" coverage and that the use of the term "occurrence" in certain sections of the policy does not preclude a finding in favor of coverage regarding the Skanes' liability claim.[2] Pioneer also contends the circuit court erred in finding that Erie had no duty under the policy of insurance to continue to provide it with a defense. Erie argues that Pioneer purchased a commercial general liability policy of insurance which specifically excludes coverage for such breach of contract actions in clear and unambiguous language. The question we must decide is whether the insurance policy in question indemnifies Pioneer against damages in an action for breach of contract and faulty workmanship on a project where the damages are the cost of correcting the work itself.

It is well settled that " ' "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).' Sy. pt. 1, *Davis v. Foley*, 193 W.Va. 595, 457 S.E.2d 532 (1995)." Syllabus Point 1, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995). Moreover, " '[a] circuit court's entry of a declaratory judgment is reviewed *de novo*.' Syl. pt. 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995)." Syllabus Point 1, *Bruceton Bank v. U.S. Fid. and Guar. Ins.*, 199 W.Va. 548, 486 S.E.2d 19 (1997).

As we stated previously, the insurance policy at issue here is titled "Ultraflex Package Policy." This policy of insurance is a commercial general liability or CGL policy which contains completed operations hazard coverage. Under "PROPERTY DAMAGE LIA-

---

1. The cause of action for slander of title was eventually dismissed by the circuit court. There is no dispute regarding that claim involved in this appeal.

2. We find no merit in Pioneer's argument that it is entitled to the benefit of construed coverage under the reasonable expectations doctrine.

"Before the doctrine of reasonable expectations is applicable to an insurance contract, there must be an ambiguity regarding the terms of that contract." Syllabus Point 2, *Robertson v. Fowler*, 197 W.Va. 116, 475 S.E.2d 116 (1996). We find no ambiguity in the insurance policy in question here.

BILITY—COVERAGE G," the policy reads as follows:

> We will pay for damages because of **personal injury** or **property damage** for which the law holds **anyone we protect** responsible and which are covered by **your** policy. **We** cover only **personal injury** and **property damage** which occurs during the policy period. The **personal injury** or **property damage** must be caused by an **occurrence** which takes place in the covered territory.

In the definitions section, the policy states that " '[o]ccurrence' means an accident, including continuous or repeated exposure to the same general, harmful conditions." Pioneer admits that paragraph B.8.e. of the policy section titled "WHAT WE DO NOT COVER—EXCLUSIONS" excludes coverage for "that particular part of any property that must be restored, repaired or replaced because **your work** was faulty." However, Pioneer contends coverage is extended under the next sentence of the paragraph, which states, "**We** will cover **property damage** included in the **products hazard** and **completed operations hazard.**" Completed operations hazard is defined as "includ[ing] all **personal injury** and **property damage** occurring away from premises **you** own or rent arising out of **your work** that has been completed or abandoned."

■ This Court has previously said, "In determining the coverage afforded by an insurance policy such policy must receive a practical and reasonable interpretation, consonant with the apparent object thereof and the intent of the parties." Syllabus Point 1, *McGann v. Hobbs Lumber Co.,* 150 W.Va. 364, 145 S.E.2d 476 (1965). It must be kept in mind that the insurance policy issued in the instant case is a liability policy, not a builder's risk policy, and Pioneer is seeking indemnity from Erie in an action brought by contracting property owners grounded upon breach of contract.

In *Helfeldt v. Robinson,* 170 W.Va. 133, 290 S.E.2d 896 (1981), a judgment was entered against William and Colleen Robinson, d/b/a Robinson Construction Company, for the faulty construction of a home. The Robinsons were insured by United States Fideli-

ty and Guaranty Company (U.S.F. & G.) under a comprehensive general automobile and property liability insurance policy. The Robinsons filed a third party complaint against U.S.F. & G., claiming the insurance company had improperly failed to defend the Robinsons in the Helfeldt action and that U.S.F. & G. was liable for all sums adjudged against the Robinsons in favor of the Helfeldts. The circuit court entered judgment in favor of the Robinsons and against U.S.F. & G. On appeal, this Court reversed, concluding that the insurance policy did not extend coverage for the defective construction of a home. The *Helfeldt* court's decision was based in part on the earlier *McGann* opinion.

In *McGann, supra,* F.D. and Margaret McGann retained Hobbs Lumber Company, a building contractor, to build a home for them. Six months after construction was completed and the McGanns moved into the house, a portion of the foundation wall collapsed, resulting in substantial damage. Hobbs Lumber Company was insured by a liability policy issued by Aetna Casualty and Surety Company. The McGanns sued Hobbs, who then joined Aetna as a third party defendant, claiming it was entitled to recover from Aetna any sums which might be adjudged against it in favor of the McGanns. The circuit court found that the claim was covered by Hobbs' insurance. On appeal, this Court reversed, holding that "[a] liability insurance policy, unlike a builder's risk policy, is designed to indemnify the insured against damage to other persons or property caused by his work or property and is not intended to cover damage to the insured's property or work completed by him." Syllabus Point 2, *McGann v. Hobbs Lumber Co.,* 150 W.Va. 364, 145 S.E.2d 476 (1965). Other jurisdictions have held similarly.

In *Bor–Son Bldg. Corp. v. Employers Com'l Union,* 323 N.W.2d 58 (Minn.1982), Bor–Son was awarded a contract to build a high-rise apartment complex for the Duluth Housing and Redevelopment Authority (HRA). Bor–Son was required to furnish a performance bond and comprehensive general liability insurance coverage. Arrangements were made with Employers Commercial Union Insurance Company of America

and Employers Liability Assurance Corporation, Ltd.(Commercial Union) to provide both. Shortly after the buildings were completed and turned over to HRA, severe water leakage problems developed. All attempts to cure the problems were unsuccessful. HRA brought suit against Bor–Son and Commercial Union, alleging the water leakage was due to defects caused by faulty materials and workmanship. HRA finally agreed to accept $450,000.00 in settlement to which Bor–Son contributed $100,750.00. Bor–Son then initiated a declaratory judgment action seeking indemnification and attorneys fees from Commercial Union. The trial court ruled in Bor–Son's favor. On appeal, the Supreme Court of Minnesota reversed, stating that "[s]ince the alleged building damages were the result of alleged breach of contract, there was no duty on Commercial Union, the comprehensive general liability insurer, to defend the HRA actions nor to indemnify Bor–Son for its contribution toward the settlement of those actions." *Id.* at 62 (footnote omitted).

In *Blaylock & Brown Const. v. AIU Ins. Co.*, 796 S.W.2d 146 (Tenn.Ct.App.1990), Blaylock and Brown Construction, Inc., a general contractor, entered into a contract with Jack G. Leach for the construction of a home. The contractor obtained a CGL policy from AIU. After construction was completed and Leach moved into the house, it was discovered there was a structural defect in the construction of the house which resulted in substantial damage to the building. The defect related to inadequate support of the concrete floor slab resulting in subsidence or settlement, which caused considerable damage to the main part of the house. Leach filed suit against the contractor. After settling with Leach, Blaylock and Brown Construction filed a declaratory judgment action against AIU, seeking a declaration that the insurance policy provided for the defense of the Leach lawsuit and damages. The trial court determined that AIU did not owe Blaylock and Brown Construction a defense to the original action or coverage for the claimed damage. On appeal, the Court of Appeals of Tennessee affirmed, holding "that the coverage for property damage provided by the standard comprehensive general liability policy does not extend coverage to an

insured-contractor for a breach of contract action such as this." *Id.* at 153.

In *Peerless Insurance Co. v. Brennon,* 564 A.2d 383 (Me.1989), the Supreme Judicial Court of Maine reversed an award of summary judgment granted to a builder under circumstances similar to the situation now before us. Robert C. Brennon and Charles Archer, d/b/a Freedom Farm Builders (Brennon), entered into a contract with Eugene and Antoinette Argiro for the framing of two houses. The Argiros instituted a lawsuit against Brennon, claiming the construction was performed in an unworkmanlike manner and that Brennon had deviated substantially from the plans and specifications. Brennon was insured under a standard CGL policy of insurance issued by Peerless Insurance Company. The insurer refused to defend Brennon and sought declaratory judgment as to whether it had a duty to defend. In support of its position, Peerless asserted that the damages were not caused by an "occurrence" as was required by the policy and that exclusions contained in the policy excluded coverage and any obligation to defend under the circumstances alleged by the Argiros. The Superior Court entered summary judgment in favor of Brennon. In reversing, the Supreme Judicial Court discussed the distinction between an occurrence of harm risk and a business risk. The court stated:

> At least one commentator has noted that the distinction between an "occurrence of harm risk" and a "business risk" is "critical to understanding" a comprehensive general liability insurance policy.
>
>> An "occurrence of harm risk" is a risk that a person or property other than the product itself will be damaged through the fault of the contractor. A "business risk" is a risk that the contractor will not do his job competently, and thus will be obligated to replace or repair his faulty work. The distinction between the two risks is critical to understanding a CGL policy. A CGL policy covers an occurrence of harm risk but specifically excludes a business risk.
>
> Note, *Baybutt Construction Corp. v. Commercial Union Insurance Co.: A Question of Ambiguity in Comprehensive General*

*Liability Insurance Policies,* 36 Me.L.Rev. 179, 182 (1984). The policies provide coverage for the former but its exclusion provisions preclude coverage for the latter. *Id.* at 182–83.

*Brennon,* 564 A.2d at 386.

■ Like the contractors in these cases, Pioneer purchased a CGL policy. These policies do not insure the work or workmanship which the contractor or builder performs. They are not performance bonds or builders' risk policies. CGL policies, instead, insure personal injury or property damage arising out of the work. The "completed operations hazard" coverage applies to collateral property damage or personal injury caused by an occurrence "arising out of your work that has been completed or abandoned." For example, the claim asserted in *Gregson v. Great American Insurance Co.,* 250 Ark. 808, 467 S.W.2d 173 (1971), was covered by insurance when a plaintiff slipped and fell in the completed section of a golf clubhouse. Also, the claim in *Nixon v. United States Fidelity and Guaranty Co.,* 290 So.2d 26 (Fla.1973), was covered when a cinder block wall collapsed on a fifteen month old child killing him.

■ Regarding the type of risk insured by a CGL policy such as the one Pioneer purchased from Erie, Dean Henderson wrote:

The products hazard and completed operations provisions are not intended to cover damage to the insured's products or work project out of which an accident arises. The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know,* 50 Neb. L.Rev. 415, 441(1971). We quote with favor from *Weedo v. Stone–E–Brick, Inc.,* 81 N.J. 233, 249, 405 A.2d 788, 796 (1979), wherein the Supreme Court of New Jersey stated, "As we have endeavored to make clear, the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." (Citations omitted). The following illustration was offered in *Weedo* to mark the distinction between "business risks" and "occurrences" which give rise to insurable liability:

When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case. The happenstance and extent of the latter liability is entirely unpredictable—the neighbor could suffer a scratched arm or a fatal blow to the skull from the peeling stonework. Whether the liability of the businessman is predicated upon warranty theory or, preferably and more accurately, upon tort concepts, injury to persons and damage to other property constitute the risks intended to be covered under the CGL.

*Id.,* 81 N.J. at 240–41, 405 A.2d at 791–92.

■ We summarize by stating that CGL policies of insurance do not provide protection for poor workmanship; instead, these policies protect an insured from liability due to personal injury or property damage to others caused by the insured's negligence.

The circuit court correctly determined that Erie had no duty to indemnify Pioneer for the faulty installation of siding and other work performed on the Skanes' residence. In view of this holding, Erie had no duty to defend. *See McGann,* 150 W.Va. at 371, 145 S.E.2d at 481 ("In view of our holding that the liability alleged in the complaint against Hobbs is excluded under (j)(4) of the Exclusions contained in the policy, the appellant, Aetna, has no duty to so defend."); *Horace Mann Ins. Co. v. Leeber,* 180 W.Va. 375, 378, 376 S.E.2d 581, 584 (1988) ("[A] liability insurer need not defend a case against the insured if the alleged conduct is entirely foreign to the risk insured against.").

 We, therefore, hold that a lawsuit commenced by a building owner against a building contractor alleging damages caused by faulty workmanship is not within the coverage provided by the contractor's general liability policy of insurance unless such coverage is specifically included in the insurance policy. A commercial general liability policy insurer has no duty to defend a contractor in a lawsuit nor to indemnify a contractor for sums paid to settle the lawsuit or to satisfy a judgment unless the insurance policy specifically requires the insurer to do so. Also, damages to a building sustained by an owner as the result of a breach of a construction contract due to a contractor's faulty workmanship are a business risk to be borne by the contractor and not by his commercial general liability insurer.

Erie had an obligation to provide Pioneer with a defense of any claims asserted against Pioneer that were within the coverage provided by the policy and to pay any claims ultimately determined to be within the policy coverage. It is clear that the damages claimed by the Skanes arose out of Pioneer's breach of contract. These damages which resulted from faulty workmanship in the performance of the building contract fall outside the coverage provided by the CGL policy of insurance purchased by Pioneer.

For the foregoing reasons, the judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.

Justice DAVIS, deeming herself disqualified, did not participate in the decision in this case.

Judge ROBERT B. STONE, sitting by temporary assignment.

Justice McGRAW dissents.

Justice SCOTT did not participate.