542 S.E.2d 886

**CINCINNATI INSURANCE COMPANY, Plaintiff Below, Appellant,**

v.

**Hugh N. MILLS, Jr. and Joseph Cordor, as Executor of the Estate of Jane W. Mills, Defendants Below, Appellees.**

**No. 27805.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 31, 2000.

Decided Dec. 7, 2000.

Christopher J. Pyles, Esq., Renatha S. Garner, Esq., MacCorkle, Lavender & Casey, PLLC, Charleston, West Virginia, Attorneys for Appellant.

John J. Polak, Esq., Asad U. Khan, Esq., Rose & Atkinson, Charleston, West Virginia, Attorneys for Appellees.

PER CURIAM:

This is an appeal by Cincinnati Insurance Company from the ruling of the Circuit Court of Kanawha County in a declaratory judgment proceeding. The circuit court held that Cincinnati Insurance Company had a duty to provide its insureds, the appellees, Hugh N. Mills, Jr., and Joseph Cordor, as Executor of the Estate of Jane W. Mills, coverage for losses resulting from damage to a sewer line. On appeal, Cincinnati Insurance Company claims that its policy did not cover the type of injury involved in this action, and that the circuit court erred in declaring that it had a duty to provide such coverage.

### I.

### FACTS

Sometime prior to the summer of 1993, the Mills Family purchased a parcel of property located in Kanawha County, West Virginia, and proceeded to develop it as Highland Meadows Subdivision.[1] In the course of the development, a contractor installed a sewer

---

properly granted summary judgment to Realmark Developments, Inc., for the rent and taxes due.

1. During the evolution of the facts preceding the bringing of the present proceeding, both Hugh N. Mills, who appears to have been the head of the Mills Family and who was instrumental in the development of Highland Meadows Subdivision, and his wife, Jane W. Mills, who had an interest in the development of the subdivision, died. They were succeeded by Hugh N. Mills, Jr., who had previously assisted his father in developing the subdivision, and Joseph Corder, Executor of the Estate of Jane W. Mills. To simplify the discussion in the present case, the various Mills parties, acting either jointly or individually, will be referred to as the "Mills Family."

line. At least one homeowner in the subdivision had connected to the sewer line by July 23, 1993, although the project was not fully completed until later. By July 20, 1994, certain defects were detected in the line.

After discovery of the defects in the sewer line, the appellant, Cincinnati Insurance Company, effective September 1, 1994, issued to the Mills Family the commercial general liability policy which is in issue in the present proceeding. The policy was a liability policy and specifically excluded from coverage any property damage that had to be repaired, restored or replaced because the Mills Family, or its agents, incorrectly performed work on it. There was, however, an exception which covered property damage resulting from uncompleted work performed by the Mills Family, or its agents, away from the premises owned or rented by the Mills Family.[2]

Over a year after the commercial general liability policy was issued, the Mills Family hired Smith Excavating Company to repair the defective sewer line.[3] In making the repairs, Smith Excavating Company acted negligently, and, in fact, actually damaged the line further. As a consequence, the Charleston Sanitary Board, which had undertaken to provide sanitary services to the families connected to the line, informed the Mills Family that the sewer line had failed an inspection and, in effect, called upon the Mills Family to repair it.

At this point, the Mills Family filed a claim against Cincinnati Insurance Company for the cost of repairing the line. It appears that in making this claim, the Mills Family believed that the sewer line in question was no longer its property, but the property of the Charleston Sanitary Board, that the work on the sewer line was incomplete, and since Smith Excavating Company was acting as its agent, the claim was covered under the policy language which covered property damage arising out of uncompleted work away from the premises owned or rented by the insured. Cincinnati Insurance Company, which apparently concluded that the sewer line was owned not by the Charleston Sanitary Board, but by the Mills Family, denied coverage on the ground that the commercial general liability policy which it had issued to the Mills Family did not cover damage to the insured's own property or damage which occurred on the insured's own property.

In addition to denying coverage, Cincinnati Insurance Company instituted the present action in the Circuit Court of Kanawha County in which it requested that the Circuit Court of Kanawha County declare its duties and obligations to the Mills Family. In a counterclaim, the Mills Family requested that the court declare that its claim was covered by the policy in question and sought reimbursement from Cincinnati Insurance Company for all sums paid to various contractors, as well as interest, fees and costs associated with the installation and repair of the sewer line.

After extensive discovery, Cincinnati Insurance Company moved for summary judg-

---

2. The policy stated:

   SECTION I COVERAGES

   &ast; &ast; &ast; &ast; &ast; &ast;

   COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

   &ast; &ast; &ast; &ast; &ast; &ast;

   2. Exclusions.

   &ast; &ast; &ast; &ast; &ast; &ast;

   j. "Property damage" to:
   (1) Property you own, rent or occupy;

   &ast; &ast; &ast; &ast; &ast; &ast;

   (6) that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

   &ast; &ast; &ast; &ast; &ast; &ast;

   Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

   The "Products-completed operations hazard" language in the policy provided:

   SECTION V DEFINITIONS

   &ast; &ast; &ast; &ast; &ast; &ast;

   11. a. "Products-completed operations hazard" includes all…"property damage" occurring away from the premises you own or rent and arising out of "your product" or "your work" except:
   (1) Products that are still in your physical possession; or
   (2) Work that has not yet been completed or abandoned.

3. In its brief, the Mills Family concedes that Smith Excavating Company acted as its agent in making the repairs.

ment, and by order entered November 17, 1999, the Circuit Court of Kanawha County denied that motion and, instead, granted the Mills Family the relief which it sought. It is from that decision that Cincinnati Insurance Company now appeals.

## II.

### STANDARD OF REVIEW

In Syllabus Point 3 of *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995), this Court specifically held: "A circuit court's entry of a declaratory judgment is reviewed *de novo.*"

## III.

### DISCUSSION

It appears that the principal question in the present case is whether the sewer line which was damaged by Smith Excavating Company, acting for the Mills Family, was the property of the Charleston Sanitary Board at the time the damage occurred, or whether it was the property of the Mills Family. If it was the property of the Charleston Sanitary Board, then the damage occurred away from the premises owned or rented by the Mills Family and was thus covered by policy language covering incomplete work away from the premises owned or rented by the insured. On the other hand, if the sewer line was owned by the Mills Family, then the damage was not covered. On appeal, it is, of course, the position of the Mills Family that the sewer line was the property of the Charleston Sanitary Board.

In arguing that the sewer line was the property of the Charleston Sanitary Board, the Mills Family relies upon the case of *Broadmoor/Timberline Apartments v. Public Service Commission of West Virginia,* 180 W.Va. 387, 376 S.E.2d 593 (1998). They argue that this case establishes that the Charleston Sanitary Board acquired the sewer line in question, and that the sewer line became the property of the Charleston Sanitary Board, when a homeowner in the Highland Meadows Subdivision first attached to it and when the Charleston Sanitary Board commenced charging that homeowner for sanitary service, which was sometime prior to the time Smith Excavating Company damaged the line.

In *Broadmoor/Timberline Apartments v. Public Service Commission of West Virginia, id.,* a private developer attached a private sewer line to the Morgantown municipal sewer system, and the question raised was whether the Public Service Commission then obtained jurisdiction over the line. This Court found that it did. Implicit in the holding, however, was the further finding that the obtaining of such jurisdiction did not, of itself, extinguish the private owner's property interest in the lines, for in the decision the Court specifically ruled that the Public Service Commission had authority to order the City of Morgantown to obtain ownership of the line. Further, in note 8 of *Broadmoor/Timberline Apartments v. Public Service Commission of West Virginia, id.,* the Court specifically stated that:

Municipalities that operate sewer systems may, by virtue of W. Va.Code, 8–20–2, exercise the power of eminent domain. When a municipality is obliged to exercise the power in furtherance of its public responsibility, but refuses to do so, the PSC may require the exercise of the power by appropriate order.

In the case presently before the Court, the sewer line in question was clearly initially the private property of the Mills Family. Contrary to the contentions of the Mills Family, the Court does not believe that the fact that a homeowner attached to the line, and the fact that the Charleston Sanitary Board began charging for service through the line, abrogated the Mills Family's ownership of it, even though such action may have subjected the line to Public Service Commission jurisdiction. In short, the Court believes that the Mills Family was the owner of the line at the time Smith Excavating Company damaged it.

In view of this, the Court concludes that when the Mills Family, acting through Smith Excavating Company, damaged the sewer line, it was performing work on its own property and that the damage, as a consequence, was not covered by the general commercial liability policy issued by Cincinnati Insurance Company.

The Court notes that in *Erie Insurance Property and Casualty Company v. Pioneer Home Improvement, Inc.,* 206 W.Va. 506, 526 S.E.2d 28 (1999), this Court specifically stated that commercial general liability policies

"do not insure the work or workmanship which the contractor or builder performs. They are not performance bonds or builders' risk policies. CGL policies, instead, insure personal injury or property damage arising out of the work." *Id.* at 511, 526 S.E.2d at 33. The Court went on to say:

The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Id.* at 511, 526 S.E.2d at 33.

In light of this, even without the exclusionary language contained in the policy issued by Cincinnati Insurance Company to the Mills Family, the Court believes that the type of damage involved in the present case would not have been insured, absent some special language specifically covering it.

For the reasons stated, the judgment of the Circuit Court of Kanawha County is reversed, and this case is remanded with directions that the circuit court declare that Hugh N. Mills, Jr., and Joseph Cordor, Executor, the members of the Mills Family who are the parties defendant in the present case, have no coverage under the insurance policy in issue in this case.

Reversed and remanded with directions.

Justice McGRAW dissents.