680 S.E.2d 392

**J.H., Plaintiff Below, Appellant,**

v.

**WEST VIRGINIA DIVISION OF REHABILITATION SERVICES, a State Agency, Defendant Below, Appellee.**

**No. 33918.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 2009.

Decided June 23, 2009.

Concurring Opinion of Justice Benjamin July 27, 2009.

Mark D. Moreland, Esq., Charleston, WV, for Appellant.

Ancil G. Ramey, Esq., Hannah B. Curry, Esq., Jan L. Fox, Esq., Steptoe & Johnson, Charleston, WV, for Appellee.

The Opinion was delivered PER CURIAM.

The Appellant, J. H.,[1] appeals an Order entered June 4, 2007, by the Circuit Court of Kanawha County concluding that the public duty doctrine was applicable to the Appellee, the West Virginia Division of Rehabilitation Services (also referred to as "the Division") and dismissing the Appellant's negligence action against the Division. Specifically, the circuit court determined that

> the Public Duty Doctrine is applicable to the defendant, a State agency charged with the safety of its residents in general. The Court **FINDS** that Plaintiff's reading of the relevant duty associated with the Public Duty Doctrine is overly narrow. Further, the Court **FINDS** that the applicable policy of insurance does not expressly waive qualified immunity or other statutory or constitutional immunity.[2]

The Appellant asks the Court to reverse the circuit court's determination that the special duty exception to the public duty doctrine was not applicable in this case. After thorough consideration of the public duty doctrine, as well as sovereign immunity and qualified immunity, we find that sufficient allegations were pleaded by the Appellant regarding the existence of the special duty exception to the public duty doctrine to survive the Appellee's Motion to Dismiss. We further find pursuant to *Parkulo v. West Virginia Bd. of Prob. and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996), that the existence of a special duty is a question of fact to be determined by the trier of fact under proper instruction of law. *Id.* at 164, 483 S.E.2d at 510, Syl. Pt. 11. Accordingly, the Court reverses and remands this case to the circuit court for further proceedings on the question of whether a special duty existed to defeat the Division's reliance on the public duty doctrine.

## I. Factual and Procedural Background

The Appellant, J. H., filed the instant action[3] in Kanawha County, West Virginia,

1. In keeping with this Court's practice of not utilizing a litigant's last name in cases involving sensitive matters, the Appellant originally filed his Complaint using only his initials, alleging therein that the Appellee was aware of the Appellant's identity. *See State ex rel. West Virginia Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689, 356 S.E.2d 181, 182 n. 1 (1987) (citations omitted) ("We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties.")

2. Because there was no error raised with the circuit court's ruling regarding the applicable policy of insurance not expressly waiving qualified immunity or other statutory or constitutional immunity, this ruling will not be disturbed by this Court.

3. The Appellant moved to amend his original Complaint after the Appellee filed a Motion to Dismiss, because the Appellant failed to allege that he only sought recovery up to the amount of liability insurance maintained by the State of West Virginia, and to address the Appellee's argument that the doctrine of qualified immunity barred a claim of mere negligence against the Division arising out of the exercise of its discretionary functions of providing vocational rehabil-

alleging that in October of 2004, he was a client of the Division and became a resident at the Division's West Virginia Rehabilitation Center (hereinafter "Rehabilitation Center") in Institute, Kanawha County, West Virginia. Because of the Appellant's compromised mobility, he was provided a room in the "Attendant Care Unit" of the Rehabilitation Center. While a resident in that unit, the Appellant allegedly was the victim of sexual molestation. The Appellant alleged that he was molested by another alleged resident/client of the Rehabilitation Center, Jeff Bell. The Appellant maintained that Mr. Bell was under investigation for an attempted molestation of another resident of the facility at the time of the incident involving the Appellant.[4] The Appellant averred that Mr. Bell was allowed private access to his bedroom.

According to the allegations contained in the Plaintiff's Amended Complaint, the Appellee advised its clients who would become residents at the West Virginia Rehabilitation Center, that it is a location with a "safe environment[.]" Additionally, the Appellant pleaded that:

    a.   The defendant, by its promises of a "safe" environment for residents of its Rehabilitation Center and its actions to impose rules and codes of conduct on such residents and its employees and staff for safety reasons, creates an affirmative duty on the defendant to provide a safe environment of its Center;

    b.   The defendant is knowledgeable that its failure to enforce its own rules and codes of conduct relating to safety can lead to harm to its residents;

    c.   The defendant had prior knowledge in this instance that resident/client Jeff Bell's conduct at the Center did not comply with rules of the Center-additionally, the defendant had knowledge that Bell had previously attempted similar conduct with another client at the Center-the defendant had knowledge of these prior incidences and still failed to take action regarding Bell necessary to prevent harm to the plaintiff and other residents of the Center;

    d.   The defendant had direct contact with the plaintiff, knew the plaintiff's physical limitations, and advised him that he would be in a safe environment at the Center;

    e.   Defendant's relationship to the plaintiff was direct and individual and therefore vastly different than defendant's relationship with the public at large;

    f.   Plaintiff justifiably relied on the defendant to provide a safe environment at its Center and an environment where the defendant would at least enforce its own rules and codes of conduct implemented to provide a safe environment[.]

As to the specific allegations of negligence, the Appellant alleged that the Appellee was negligent in: 1) the failure to properly supervise unauthorized persons, including Jeff Bell, in the "Attendant Care Unit"; 2) the failure to provide proper security to J. H.; 3) the failure to enforce rules at the Rehabilitation Center concerning curfews, bed checks, "lights out", etc.; 4) the failure to cease Jeff Bell's status as student/client resident and employee status[5] after receiving complaints

---

itation services to disabled individuals. The circuit court allowed the Appellant to file an Amended Complaint to address the issues raised by the Division in its first Motion to Dismiss. The Appellant's Amended Complaint included allegations regarding the Appellant seeking recovery up to the amount of liability insurance maintained by the State.

**4.** There was no allegation that the Appellant knew about the prior complaint against Jeff Bell or had any direct contact with the Division regarding Jeff Bell's conduct before the alleged assault upon the Appellant. According to the Plaintiff's Combined Memorandum in Support of Motion to Amend Complaint and in Response to

Defendant's Motion to Dismiss, there was, however, a complaint made against Mr. Bell a day prior to the incident that is the subject of this litigation and that complaint involved an attempted molestation of another young male student living at the Rehabilitation Center.

**5.** Whether Jeff Bell was an employee was disputed before the circuit court. The Appellee argued that Mr. Bell was an attendant, which by statutory definition found in West Virginia Code § 18–10A–1(15), means "a self-employed individual who is trained to perform attendant care services and who works as an independent contractor." *Id.*

of similar conduct of Jeff Bell; and 5) the failure to coordinate rules and responsibilities of staff in the dormitories and staff in the hospital.

The Appellee filed a second Motion to Dismiss the Amended Complaint pursuant to the provisions of West Virginia Rule of Civil Procedure 12(b) arguing that: 1) there was no express waiver or alteration of the State's statutory or common law immunities in the applicable insurance contract;[6] 2) the Plaintiff's negligence claims against the Division were barred by the doctrine of qualified immunity; 3) the Division owed no special duty to protect the Plaintiff from the deliberate criminal conduct of Jeff Bell. The circuit court by Order entered June 4, 2007, granted the Division's motion, determining that the public duty doctrine was applicable to the Division.[7] It is this ruling that forms the basis for the instant appeal.

## II. Standard of Review

In the case sub judice, the Appellant filed a Motion for Reconsideration in accordance with the provisions of West Virginia Rule of Civil Procedure 59(e).

The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. Pt. 1, *Wickland v. American Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998). Therefore, we review a circuit court's order granting a motion to dismiss a complaint under a de novo standard. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995); *see Richardson v. Kennedy*, 197 W.Va. 326, 331, 475 S.E.2d 418, 423 (1996). Having established the applicable standard of review, the Court now considers the parties' arguments.

## III. Discussion

The Appellant argues that: 1) the circuit court erred by applying the public duty doctrine to immunize the Division from liability when the Division owed a special duty to the Appellant; and, 2) the circuit court erred by granting the Motion to Dismiss. The Appellee asserts that: 1) the Division cannot be held liable under the insurance exception to sovereign immunity where the State's liability policy does not provide coverage for sexual misconduct by a third party where the Division is not legally responsible for the third party; 2) the doctrine of qualified immunity bars a claim of mere negligence against the Division as a State agency; and, 3) the public duty doctrine and its special relationship exception do not apply to the Division to avoid dismissal of a claim of mere negligence against the Division under the doctrine of qualified immunity.

The only issue that needs resolution in this matter is whether the circuit court erred in dismissing the action due to the application of the public duty doctrine. However, because there remains a great deal of confusion as to sovereign immunity, qualified immunity, and the public duty doctrine, a general discussion of the analytical framework for these doctrines, as well as the public duty doctrine may be helpful.

### A. Sovereign Immunity

Article VI, Section 35 of the West Virginia Constitution grants immunity for claims against the State by providing, in relevant part, that "[t]he State of West Virginia shall never be made defendant in any court of law or equity[.]" *Id.* As we stated in *Parkulo v. West Virginia Board of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996), "[t]his Court has long held that Article VI, § 35 of the State Constitution grants sovereign immunity to the State and that the agencies and instrumentalities of the State are entitled to the benefit of that immunity."[8] *Parkulo*, 199 W.Va. at 168, 483 S.E.2d

---

**6.** As previously mentioned in note 2 *supra*, the circuit court ultimately agreed with the Appellee on this issue as indicated in its Order granting the Motion to Dismiss and the Appellant has conceded this issue on appeal.

**7.** The Appellant filed a Motion for Reconsideration, which was denied by the circuit court in an Order entered June 19, 2007.

**8.** The enactment by the Legislature of the Governmental Tort Claims and Insurance Reform

at 514. Notwithstanding the grant of sovereign immunity found in our State's Constitution, "the Legislature has also authorized the purchase of liability insurance providing coverage of State 'property, activities and responsibilities[.]'" *Id.;* W. Va.Code § 29–12–5(2008). Thus, this Court held in syllabus point two of *Pittsburgh Elevator v. West Virginia Board of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983), that "[s]uits which seek no recovery from state funds, but rather allege. that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State." *Id.* at 744, 310 S.E.2d at 676, Syl. Pt. 2.

■ Subsequently, in *Eggleston v. West Virginia Department of Highways,* 189 W.Va. 230, 429 S.E.2d 636 (1993), the Court held in syllabus point one that

W. Va.Code, 29–12–5(a) (1986), provides an exception for the State's constitutional immunity found in Section 35 of Article VI of the West Virginia Constitution. It requires the State Board of Risk and Insurance Management to purchase or contract for insurance and requires that such insurance policy "shall provide that

the insurer shall be barred and estopped from relying upon the constitutional immunity of the State of West Virginia against claims or suits."

*Eggleston,* 189 W.Va. at 230–31, 429 S.E.2d at 636–37, Syl. Pt. 1. The West Virginia Supreme Court, therefore, has been clear that it will review law suits against the State pursuant to West Virginia Code § 29–12–5 where it is alleged that "the recovery sought is limited to the applicable insurance coverage and the scope of the coverage and its exceptions are apparent from the record." *Parkulo,* 199 W.Va. at 163, 483 S.E.2d at 509, Syl. Pt. 3, in part.

■ In the case sub judice, the Appellant, in his Amended Complaint, does make the requisite allegation that the Appellant only seeks recovery under and up to the limits of the State's liability insurance coverage. Further, the allegations against the Division are not predicated upon an intentional act but are grounded in negligence. Thus, this is not a case in which sovereign immunity should be applied. Yet the Division engages in a lengthy discussion in its brief regarding the applicability of sovereign immunity. The Division's Motion to Dismiss the original Com-

---

Act ("the Act"), West Virginia Code §§ 29–12A–1 to −18 (2008), was intended to apply to "the political subdivisions of this State." W. Va.Code § 29–12A–2. By definition, the State of West Virginia is not considered a "political subdivision." W. Va.Code § 29–12A–3(e)("'State' does not include political subdivisions."). As the Court stated in *Parkulo,* the Act "incorporated the common-law rule granting local governments immunity with respect to '[l]egislative and quasi-legislative functions, judicial, quasi-judicial and prosecutorial functions' and the 'adoption or failure to adopt a law . . . rule, regulation or written policy.'" 199 W.Va. at 174, 483 S.E.2d at 521(citing W. Va.Code § 29–12A–5(a)(1)–(2), (4)(1986)).

The Court engaged in a lengthy discussion in *Parkulo* of the leading cases in this State relating to common law immunity. Unlike sovereign immunity, which is derived from the West Virginia Constitution, the Court, in *Parkulo,* noted that while it had followed a general rule that municipalities of the State enjoyed a broad immunity for "governmental" functions, in *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975), the Court abolished the rule of municipal governmental immunity, determining that a municipal corporation is liable as if it is a private person. *Parkulo,* 199 W.Va. at 171, 483 S.E.2d at 517

(quoting Syl. Pts. 10 and 11, *Long,* 158 W.Va. at 742, 214 S.E.2d at 838). The abolition of common law immunity was based upon the Court's determination that

[i]nasmuch as a common-law rule of municipal governmental immunity from tort liability was not adopted and operable within the Commonwealth of Virginia prior to the formation of this State, that supposed rule was not incorporated by Constitution into the common law of West Virginia.

*Long,* 158 W.Va. at 742, 214 S.E.2d at 838, Syl. Pt. 9. The abolition of common law governmental immunity was later extended by the Court to county boards of education and county commissions. *Parkulo,* 199 W.Va. at 172, 483 S.E.2d at 518 (citing *Ohio Valley Contractors v. Board of Educ. of Wetzel County,* 170 W.Va. 240, 293 S.E.2d 437 (1982) and *Gooden v. County Comm'n of Webster County,* 171 W.Va. 130, 298 S.E.2d 103 (1982)).

Subsequently, in 1986, the Legislature passed the Act. *See* W. Va.Code §§ 29–12A–1 to −18. This Court has previously characterized the Act as "an appropriate legislative reaction to the abolition by this Court of the doctrine of municipal, county, and other political subdivision governmental immunity, as reflected by *Long* and its progeny." *Parkulo,* 199 W.Va. at 174, 483 S.E.2d at 521.

plaint and its Motion to Dismiss the Amended Complaint, however, focused not upon sovereign immunity but upon qualified immunity and the public duty doctrine.

Moreover, the Division's argument regarding sovereign immunity before this Court is predicated upon the Division's assertion that the sexual misconduct of a third party, Mr. Bell, was not covered by the State's liability insurance policy either because the Division was not legally responsible for the actions of Mr. Bell, or because the alleged action of the perpetrator, Mr. Bell, was an intentional act and did not constitute an occurrence. The Division relies upon this Court's decision in *Smith v. Animal Urgent Care, Inc.*, 208 W.Va. 664, 542 S.E.2d 827(2000), as support for its argument that "[t]he Appellant's negligence claims based on allegations of sexual misconduct by a third party, Jeff Bell, are not 'accidental' so as to constitute an 'occurrence' covered under 'Coverage A—Comprehensive General Liability Insurance." *Id.* at 665, 542 S.E.2d at 828, Syl. Pt. 2 ("In an insurance liability policy, a claim based on sexual harassment does not come within the definition of 'occurrence,' which is defined as an 'accident, including continuous or repeated exposure to substantially the same general harmful conditions.' "). The Division failed, however, to discuss the case that is controlling on the issue of whether the alleged assault constituted intentional conduct under the applicable liability insurance policy. In *Columbia Casualty Co. v. Westfield Insurance Co.*, 217 W.Va. 250, 617 S.E.2d 797 (2005), the United States Court of Appeals for the Fourth Circuit, on a certified question of law, asked whether jail inmate suicides were "occurrences" under a liability insurance policy issued to the Randolph County Commission. *Id.* at 251, 617 S.E.2d at 798. This question arose out of an insurer's declaratory judgment action against another insurer seeking a determination of one insurer's duty to defend and provide liability coverage for two separate suicides that had occurred in the Randolph County jail. *Id.* The estates of the decedents had brought actions against the Randolph County Commission and the Randolph County Sheriff claiming that the defendants were legally required to pay wrongful death damages as a result of their alleged wrongful acts and omissions causing the deaths. *Id.*

■ In analyzing the relevant language defining the term "accident" as found within the liability insurance policy [9] at issue in *Columbia Casualty*, we made it clear in our holding that

> [i]n determining whether under a liability insurance policy an occurrence was or was not an "accident"—or was or was not deliberate, intentional, expected, desired, or foreseen—primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at issue.

*Id.* at 250, 617 S.E.2d at 797, Syllabus. In so holding, the Court explained that to adopt the argument that whether the actor's conduct was intentional or accidental should be determined from the perspective of the actor and not the insured would

> preclude liability insurance coverage for insureds in many cases involving allegedly

9. In the instant action, the relevant policy language is virtually identical to the language the Court reviewed in *Columbia Casualty*. To that end, the language in the relevant insurance policy in the instant case concerning "Coverage A.— Comprehensive General Liability Insurance" is as follows:

> The Company will pay on behalf of the "insured" all sums which the "insured" shall become legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "occurrence", and the Company shall have the right and duty to defend any suit against the "insured" seeking damages on account of such "bodily injury" or "property

> damage", even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

Further, an "occurrence," is further defined within the policy as "an accident, including continuous or repeated exposure to conditions, which results in 'bodily injury' or 'property damage' neither expected nor intended from the standpoint of the 'insured.'"

intentional or non-accidental conduct by actors who had a substantial and material role in causing an injury, but where the insured seeking coverage cannot be fairly "tarred with the same brush" of that actor's coverage-defeating conduct.... We see no intent in our cases interpreting and applying general liability coverage to deny liability coverage to insureds in a wide range of cases where an insured was allegedly negligent but did not (actually or constructively) intend to cause a specific injury. The purpose of insurance liability policies is to provide a defense and indemnification to an insured for claims arising from the insured's own negligent acts or omissions. *Erie Ins. Prop. & Cas. Co. v. Pioneer Home Improvement*, 206 W.Va. 506, 511, 526 S.E.2d 28, 33 (1999).

*Columbia Cas.*, 217 W.Va. at 254, 617 S.E.2d at 801 n. 5.

In the instant case, it is undeniable that from the viewpoint of the insured, the Division, the alleged molestation of the Appellant was not expected or intended by the Division.[10] Instead, the allegations in the Appellant's Amended Complaint focus on the alleged negligent conduct of the Division in failing: 1) to supervise Mr. Bell; 2) to provide proper security to the Appellant; 3) to enforce rules at the Rehabilitation Center; 4) to allow Mr. Bell to continue in a student/client resident and employee status after receiving complaints of similar conduct; and 5) to coordinate rules and responsibilities of staff at the Rehabilitation Center. Consequently, pursuant to *Columbia Casualty*, the alleged conduct which formed the basis for the underlying action falls within policy defi-

---

10. *See supra* note 9.

11. The Court was referring to the Governmental Tort Claims and Insurance Reform Act, West Virginia Code §§ 29–12A–1 to –18. *See supra* note 8. Specifically, the Act delineates certain immunities from liability, West Virginia Code § 29–12A–5, and is applicable to "both governmental and proprietary functions." W. Va.Code § 29–12A–4(a).

12. As the United States Court of Appeals for the Fourth Circuit recently stated in *Cloaninger v. McDevitt*, 555 F.3d 324 (4th Cir.2009), in a case involving claims brought pursuant to 42 U.S.C. § 1983:

nition of an occurrence and, therefore, sovereign immunity is not applicable to preclude the Appellant's action against the Division.

### B. Qualified Immunity

█ We next examine whether the doctrine of qualified immunity bars the Appellant's negligence claim. There are no allegations in the Amended Complaint that a violation of a clearly established constitutional or statutory right occurred. The Division argues that because qualified immunity protects governmental entities from tort liability for alleged negligence in the exercise of "discretionary" functions, the Appellant's Amended Complaint alleging mere negligence rather than a violation of any clearly established law failed to state a claim against the Division for which relief could be granted.

█ Regarding qualified immunity, in *Parkulo*, the Court held in syllabus points eight and nine that:

"A public executive official who is acting within the scope of his authority and is not covered by the provisions of W. Va.Code, 29–12A–1, et seq.,[11] is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known. There is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive. To the extent that *State ex rel. Boone National Bank of Madison v. Manns*, 126 W.Va. 643, 29 S.E.2d 621 (1944), is contrary, it is overruled." Syllabus, *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992).[12]

Qualified immunity, when found to apply, bars § 1983 suits against government officers in their individual capacity. *Brandon v. Holt*, 469 U.S. 464, 472–73 & 473 n. 24, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Owen v. City of Independence*, 445 U.S. 622, 638 & n. 18, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Qualified immunity provides "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *accord Pearson v. Callahan*, —— U.S. ——, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). Because the doctrine seeks to protect government offi-

In cases arising under W. Va.Code § 29–12–5, and in the absence of express provisions of the insurance contract to the contrary,[13] the immunity of the State is coterminous with the qualified immunity of a public executive official whose acts or omissions give rise to the case. However, on occasion, the State will be entitled to immunity when the official is not entitled to the same immunity; in others, the official will be entitled to immunity when the State is not. The existence of the State's immunity of the State must be determined on a case-by-case basis.

*Id.* at 164, 483 S.E.2d at 510, Syl. Pt. 9 (footnote added).

▓▓▓▓ Subsequently, in *Clark v. Dunn,* 195 W.Va. 272, 465 S.E.2d 374 (1995), the Court held in syllabus point four and six that:

If a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby.

. . .

In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va.Code § 29–12A–1, *et seq.,* and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

195 W.Va. at 273–74, 465 S.E.2d at 375–76, Syl. Pts. 4 and 6.

▓▓▓ Further, in the context of a State agency, like the Division, this Court held in *Parkulo* that:

Unless the applicable insurance policy otherwise expressly provides, a State agency or instrumentality, as an entity, is immune under common-law principles from tort liability in W. Va.Code § 29–12–5 actions for acts or omissions in the exercise of a legislative or judicial function and for the exercise of an administrative function involving the determination of fundamental governmental policy.

199 W.Va. at 163–64, 483 S.E.2d at 509–10, Syl. Pt. 6.

Consequently, the first issue that must be determined in analyzing the issue of qualified immunity and the applicability of this immunity to a State agency is whether the State's insurance policy expressly waives common-law immunity for tort liability. In the instant matter, no such waiver exists. Thus, the second inquiry is whether the State entity was exercising a legislative or judicial function or an administrative function involving the determination of a fundamental governmental policy. There are no allegations made by the Appellant of any type of legislative, judicial, or administrative functions involving the determination of a fundamental governmental policy, which are the types of functions susceptible to the application of qualified immunity. *Pittsburgh Elevator Co.,* 172 W.Va. at 744, 310 S.E.2d at 676, Syl. Pt. 2. Thus, the doctrine of qualified immunity does not preclude this claim.

*Cloaninger,* 555 F.3d at 330; *see Robinson v. Pack,* 223 W.Va. 828, 679 S.E.2d 660 (2009)(discussing qualified immunity in context of allegations of unreasonable search and seizure, unlawful detention and excessive force against police officer).

cials from the burdens of trial and preparing for trial, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)(per curiam). Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading immunity is entitled to dismissal before the commencement of discovery." *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806.

13. As previously mentioned *supra,* the circuit court's determination that "the applicable policy of insurance does not expressly waive qualified immunity or other statutory or constitutional immunity" is uncontested by the Appellant.

## C. Public Duty Doctrine

Having disposed of both sovereign immunity and qualified immunity, we direct our attention to the pivotal issue in this matter, which is the public duty doctrine and whether the special relationship exception applies in this case. Generally, "[t]he duty imposed upon a governmental entity is one owed to the general public, and unless the injured party can demonstrate that some special relationship existed between the injured person and the allegedly negligent entity, the claim is barred." *Jeffrey v. West Virginia Dep't of Pub. Safety, Div. of Cor.*, 198 W.Va. 609, 614, 482 S.E.2d 226, 231 (1996). As the Court has previously recognized "the public duty doctrine is a principle independent of the doctrine of governmental immunity, although in practice it achieves much the same result." *Benson v. Kutsch*, 181 W.Va. 1, 2, 380 S.E.2d 36, 37 (1989). The Appellant maintains that as a resident of the attendant care unit at the Rehabilitation Center, he had a special relationship with the Division beyond the relationship with the general public. The Appellant maintains that the Division had full knowledge of the Appellant's compromised mobility and had knowledge of Jeff Bell's prior sexual predator acts at the Rehabilitation Center. The Appellant also maintains that at the time of the alleged molestation, the Division allowed Mr. Bell private access to the Appellant's bedroom.

Contrariwise, the Division argues that the public duty doctrine only applies to "an alleged breach of a nondiscretionary duty to provide fire or police or other public safety protection to an individual[,]" *see Randall v. Fairmont City Police Department*, 186 W.Va. 336, 346–47, 412 S.E.2d 737, 747–48 (1991), and the Division maintains that it has no nondiscretionary statutory duty to provide police, fire, or other public safety protection to disabled individuals or the general public. The Division, therefore, asserts that the Appellant failed to allege operative facts that would support the application of the public duty doctrine or its special relationship exception to avoid dismissal of his negligence claims under the doctrine of qualified immunity.

First, it is important to note that the public duty doctrine is not an immunity; but, "rests on the principle that recovery may be had for negligence only if a duty has been breached which was owed to the particular person seeking recovery." *Parkulo*, 199 W.Va. at 172, 483 S.E.2d at 518. Hence,

> "[t]he public duty doctrine states that a governmental entity's liability for nondiscretionary governmental functions may not be predicated upon the breach of a general duty owed to the public as a whole; instead, only the breach of a duty owed to the particular person injured is actionable." *Wolfe v. City of Wheeling*, 182 W.Va. 253, 256, 387 S.E.2d 307, 310 (1989). The linchpin of the "public duty doctrine" is that some governmental acts create duties owed to the public as a whole and not to the particular private person or private citizen who may be harmed by such acts. *Parkulo v. West Virginia Bd. of Probation and Parole*, 199 W.Va. 161, 172, 483 S.E.2d 507, 518 (1996).

*McCormick v. West Virginia Dep't of Pub. Safety*, 202 W.Va. 189, 194, 503 S.E.2d 502, 507 (1998).

In *Parkulo*, the Court held in syllabus point ten that "[t]he public duty doctrine and its 'special relationship' exception apply to W. Va.Code § 29–12–5 actions against the State and its instrumentalities, unless the doctrine is expressly waived or altered by the terms of the applicable insurance contract." 199 W.Va. at 164, 483 S.E.2d at 510, Syl. Pt. 10. Further,

> [t]he four requirements for the application of the "special relationship" exception to W. Va.Code § 29–12–5 cases are as follows: (1) An assumption by the state governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the state governmental entity's agents that inaction could lead to harm; (3) some form of direct contract between the state governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the state governmental entity's affirmative undertaking.

199 W.Va. at 164, 483 S.E.2d at 510, Syl. Pt. 12. Finally, this Court previously held that "[i]n cases arising under W. Va.Code § 29-12-5, the question of whether a special duty arises to protect an individual from a State governmental entity's negligence is ordinarily a question of fact for the trier of facts." 199 W.Va. at 164, 483 S.E.2d at 510, Syl. Pt. 11.

In the instant case, the Court concludes that the circuit court erred in granting the Division's Motion to Dismiss. A de novo review of the allegations contained in the Appellant's Amended Complaint reflects that sufficient allegations are present to allow the Appellant's claims to go forward against the Division. It is for a jury to determine, under appropriate instruction of law, whether a special duty arises to protect the Appellant from the Division's alleged negligence. *Id.* We, therefore, reverse the decision of the circuit court and remand this case for reinstatement of the Appellant's claims based upon the allegations of a special relationship and a special duty.

## IV. Conclusion

Based on foregoing, we reverse the decision of the circuit court dismissing the Appellant's action and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

Chief Justice BENJAMIN concurs and reserves the right to file a separate opinion.

BENJAMIN, Chief Justice, concurring.

(Filed July 27, 2009)

I concur with the holding of the Court. I write separately to again question the jurisprudence of this Court's holding in *Pittsburgh Elevator Co. v. West Virginia Board of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983). The majority incorporates as Syllabus Point 2 herein, the second syllabus point of *Pittsburgh Elevator*, in which this Court held that "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State."

As set forth in my concurring opinion in *Blessing v. National Engineering & Contracting Co.*, 222 W.Va. 267, 664 S.E.2d 152 (2008), I believe the constitutionality of the *Pittsburgh Elevator* decision should be reconsidered by this Court in view of the clear and unambiguous mandate of sovereign immunity set forth in our Constitution. The Constitution of West Virginia, Art. VI, § 35 (1872). Judicially-created exceptions to clear and unambiguous mandates in the Constitution of West Virginia are neither appropriate nor legitimate. Although it may be tempting, perhaps even expedient, for this Court to nullify or amend constitutional provisions for reasons we deem important or necessary, we must resist this urge lest this Court exceed both its legitimate power and our role in constitutional governance. In this manner, we serve the greater good when we adhere to our constitutional mandate, not when we except ourselves from our constitutional obligations in order to serve partisan agendas or to satisfy some vague personal notion of cosmic justice. Such is a disrespect to the document from which we derive our power.

I further believe that this Court should also make inquiry into how payments in a claim such as this would be made to one making a claim against a State agency. Should payments be made directly or indirectly from a state agency and not from a separate bona fide insurance policy purchased by the State, *Pittsburgh Elevator*, in my opinion, would not, by its own terms, apply.

I do not dissent herein, however, because the constitutional viability of *Pittsburgh Elevator* was not properly raised as error herein. The issue not being properly being before the Court, I do not fault my colleagues for not addressing the issues of sovereign immunity and coverage and concur in the majority opinion.